**W. A. MADDOX and wife, Frances Maddox, et al., Plaintiffs,**

v.

**James BRADLEY et al., Defendants.**

**Civ. A. No. 2–1217.**

United States District Court,
N. D. Texas,
Amarillo Division.

June 21, 1972.

Robert L. Templeton, Kolander, Templeton & Hamilton, Amarillo, Tex., for plaintiffs.

Eldon B. Mahon, U. S. Atty., by Claude D. Brown, Asst. U. S. Atty., Fort Worth, Tex., B. Richard Taylor, Atty., Land & Natural Resources Division, Department of Justice, Denver, Colo., for defendants.

### MEMORANDUM OPINION AND ORDER

WOODWARD, District Judge.

By their amended complaint, filed on May 31, 1972, plaintiffs ask for injunctive relief against defendants to restrain and enjoin their proposed action in awarding a contract to erect a fence on the boundary line between 6,816.5 acres of land belonging to the United States Government and adjoining tracts owned by plaintiffs. Defendant Bradley is the present Regional Director of Region Five of the Bureau of Reclamation, Department of the Interior, United States

Government; defendant Hill is the immediate past Regional Director of said Region Five; and defendant Darrow is Chief Appraiser and Chief of Land Acquisition of said Region Five. All of the defendants and plaintiffs reside within the Northern District of Texas. Region Five of the Bureau of Reclamation has its principal offices in Amarillo, Potter County, in the Northern District of Texas, and includes within its jurisdiction the lands here in question which are situated in New Mexico.

█ The allegations of arbitrary and capricious acts and abuse of discretion on the part of the defendants, though unproven, are sufficient to confer jurisdiction on this Court under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Title 28 U.S.C. § 1391(e) established venue in the Northern District of Texas under the facts pleaded by plaintiffs.

The 6,816.5 acres of land involved in this action were formerly part of a larger ranch owned by plaintiffs and their predecessors in title. By Declaration of Taking dated July 21, 1965, the United States of America filed its intention to take and condemn the fee simple title in and to the surface estate as well as to that part of the mineral estate owned and held by W. A. Maddox, Trustee, and the other owners of the surface estate. At the first trial of the condemnation proceedings, the landowners were awarded approximately $155,000.00 but this judgment and verdict was reversed by the United States Court of Appeals for the Tenth Circuit on the basis that the trial court had erred in its instructions to the jury concerning special right of access and other matters pertinent to the extent of the taking. 6816.5 Acres of Land, etc., Rio Arriba County, New Mexico v. United States, 411 F.2d 834 (1969). In their opinion, the Tenth Circuit specifically held:

"[T]he United States as the owner in fee will have the legal right to fence the reservoir or otherwise prevent access to the water. The landowners will have no greater rights than the general public. Thus, the right of access in itself will not be a special benefit and the lack of access will affect the value of the special benefit arising by reason of the lakeside property's potential for homesite development." Pp. 837 and 838.

At the second trial in the United States District Court for the District of New Mexico, a judgment was entered on the verdict on March 19, 1971 for $309,545.-00, and the United States of America was awarded fee simple title to the tract as described, less certain outstanding mineral interests which are not involved in this particular suit.

On May 23, 1972, plaintiffs filed in this Court a plea for injunctive and declaratory relief to prevent the Bureau of Reclamation from letting a contract to fence the condemned tract.

Upon the filing of the original complaint by the plaintiffs in this Court on May 23, 1972, the Court held a hearing on the question of temporary relief, with attorney for the plaintiffs and attorney for the United States Government being present. At the completion of that hearing, the Court issued a temporary restraining order which permitted the Bureau of Reclamation to let the contract for the fencing but restrained it from allowing actual construction to begin on the fence pending a hearing on the request for permanent relief. Notice was given and the second hearing was held in Amarillo, Texas, on Friday, June 2, 1972, with plaintiffs and their attorneys being present as were the attorneys for the United States of America.

After due consideration of the evidence presented, the briefs and the arguments of counsel, this Court has determined that all relief prayed for by plaintiffs should be denied and that defendants' motion to dismiss should be granted. The Court files this memorandum opinion as its findings of fact and conclusions of law in support of the order hereinafter entered.

It is the position of plaintiffs that, although the condemnation proceedings in the New Mexico District Court are now

complete and final and plaintiffs have been paid and the United States Government has received fee simple title to the tract in question, the United States should nevertheless be restrained and enjoined from fencing the boundary line between the condemned tract and the remainder of the ranch owned by plaintiffs because the fence will deprive the cattle belonging to plaintiffs and their tenants from watering in the creeks, tanks and springs of the 6,816.5 acres acquired by the Government for the purpose of providing a collecting and holding reservoir for water. In support of their position, plaintiffs urge the Court to consider the testimony of the Government appraisers and witnesses at the condemnation trial in which said Government witnesses indicated to the Court and jury that the land would not be fenced.

Plaintiffs are contending that the United States of America and its agents and employees are judicially estopped to take the proposed fencing action because of the inconsistent position taken by the Government and its witnesses in the prior judicial proceeding. However, this Court is of the opinion that the doctrine of judicial estoppel or preclusion is not applicable in this case. Although generally the doctrine of preclusion can be asserted against the United States of America, it is not applicable if the use of the doctrine would be against public policy, or if those taking the prior inconsistent position exceeded their authority in doing so. [See Moore's Federal Practice, ¶ 0.405(a), page 765 et seq.] Not only would it be against sound public policy to allow private landowners to dictate to the United States of America how it should operate its dams, reservoirs and surrounding lands; but also the witnesses in the New Mexico condemnation case were without authority to bind the United States of America in this respect. Even if it might be shown that the witnesses of the Government and the Government employees and appraisers did in fact testify under oath that the land would never be fenced and that the adjoining landowners would always have the right to water their cattle out of the reservoir being constructed, such testimony by such employees was not authorized or within the scope of their authority and would have no binding effect on the Government. The Declaration of Taking, the Complaint in Condemnation, the opinion of the Tenth Circuit and the charge of the trial court to the jury in the retrial of the condemnation case all plainly indicated and defined the rights of the United States of America in the lands in question. They specifically stated that the title being acquired was a fee simple title to the surface estate, that the landowners would have no right of access to same, that the Government's title was full and exclusive to all others, and that their right to fence same could not be questioned. Any witness or Government agent or employee taking a contrary position was without authority to do so and the doctrine of preclusion cannot be invoked in this case.

As a matter of interest, if such doctrine were to be invoked at all in this case, it could be successfully invoked against the plaintiffs because of their position on appeal from the first condemnation trial that since the Government did have a right to fence the area in question, the amount of compensation to be awarded them should be increased. Their insistence on this position obtained for them a second trial and an increase of almost 100% in the amount of their award; therefore they conceivably should be precluded from taking an inconsistent position in asking this Court to issue its injunction.

In addition to their estoppel argument, plaintiffs claim that the act of fencing the land at this time is an arbitrary and capricious act on the part of the Government and the officials involved, motivated by a desire to "spite" plaintiffs for having taken the Government to trial a second time for a much bigger award. The evidence wholly fails to support the above allegations.

In effect, plaintiffs are asking this Court to reverse the final judgment of the New Mexico condemnation proceedings and to take away from the fee simple surface estate awarded to the Government by those proceedings and give it an easement only, thereby granting to the plaintiffs a full right of access across the lands in question. This Court has no authority to take such action. The judgment of the New Mexico court is final, and the fee simple title in such surface is vested in the United States Government and cannot be altered or diminished by any action of this Court, by the awarding of injunctive relief or otherwise.

Plaintiffs, in their amended complaint, make the additional plea to the Court to grant injunctive relief because no proper environmental impact study has been made by defendants, the Bureau of Reclamation, the Department of the Interior, or by any agency of the United States Government prior to their proposed action in fencing the 6,816.5 acres in question. Injunctive relief of this sort is denied for the following reasons:

1) The Environmental Protection Act (42 U.S.C. § 4332) became effective on the 1st day of January, 1970, but the proposed reservoir was planned well before such date. Defendant Bradley, the present Regional Director of Region Five of the Bureau of Reclamation, testified in the second hearing before this Court that the Definite Plan Report of 1964 by the Bureau of Reclamation in connection with this entire project, which was in evidence at the condemnation trials, specifically recommended the fencing of the land to increase the carrying power of wildlife grazing. The entire project, including the fencing, having been planned and scheduled long before the date of the Environmental Protection Act, the plaintiffs in this case are not entitled to have injunctive relief granted on this ground.

It is unreasonable to assume that Congress would intend that the Government, having acquired fee simple title to this land for the purpose of constructing a reservoir and for the additional purpose of protecting wildlife, would now be required to have an environmental study made on a relatively small part of the entire project—the fencing of the boundary lines. In this particular instance, the National Environmental Protection Act cannot be applied retroactively to be grounds for relief to plaintiffs. Ragland v. Mueller et al., 460 F.2d 1196 (5th Cir. 1972.)

2) It further appears from the evidence presented to this Court that the fence will in fact enhance the protection of the environment in this area by preventing grazing by livestock on these lands in order that the wildlife will have adequate grazing. Dr. Maddox, in his testimony to this Court on the second hearing, indicated that the fence to be built would not in any way keep wildlife from crossing over into the area in question but would only keep livestock out. Not only is this particular fence project not of major importance to require the Government to make the necessary environmental study in this case, but the evidence here indicates that the creation of the fence will enhance rather than destroy or take away from proper environmental control of the area.

3) Plaintiffs in this case have no standing to urge the relief sought under the Environmental Protection Act. Plaintiffs have not asserted or alleged any individualized harm to any of them because of the lack of any environmental study, and have admitted in court that the only harm to them is that the building of the fence will prevent watering of their livestock. For any damage that they may suffer in this respect they have been fully compensated by the previous condemnation proceedings, and therefore they cannot again assert any damage or harm on this ground. There has neither been alleged nor shown any other potential harm to plaintiffs, to any other person, or to the environment that might occur as the result of the fencing. The lack of individualized harm to plaintiffs in this respect prevents them from

having the necessary standing to assert this ground for relief. Sierra Club v. Morton, Secretary of the Interior, et al, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).