Fred P. **TASNER** and Harry Fox, on behalf of themselves individually and as members of the USI Stockholders' Committee and representatively and derivatively on behalf of themselves and all of the stockholders of U. S. Industries, Inc. similarly situated, Plaintiffs,

v.

I. John **BILLERA** and U. S. Industries, Inc., Defendants.

No. 74 C 239.

United States District Court, N. D. Illinois, E. D.

July 5, 1974.

See also D.C., 379 F.Supp. 809.

**816**

Abner T. Mikva, D'Ancona, Pflaum, Wyatt & Riskind, Chicago, Ill., for plaintiffs.

Henry M. Thullen, Stanley B. Block, John J. Cassidy Jr., Vedder, Price, Kaufman & Kammholz, and Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the plaintiff Fred P. Tasner's motion for leave to file an amended and supplemental complaint.

This diversity action seeking injunctive relief and damages was instituted on January 23, 1974 in the Circuit Court of Cook County, Illinois. It was thereafter removed to this Court pursuant to 28 U.S.C. § 1441(a) within the time prescribed by law. This Court allegedly has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. The matter in controversy allegedly exceeds the sum of $10,000 exclusive of interest and costs.

The plaintiffs, Fred P. Tasner and Harry Fox, are citizens of the State of Illinois. The defendant, I. John Billera is a citizen of the State of Connecticut. The defendant U.S. Industries, Inc. ("USI") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of New York.

The named plaintiffs in their original complaint allege two causes of action. The first cause of action is on behalf of the plaintiffs individually and the other is a derivative and representative claim on behalf of all USI stockholders "similarly situated".

In substance, the plaintiffs in the original complaint alleged that they are substantial USI stockholders and were executive employees of USI. After the named plaintiffs and others formed the "USI Stockholders Committee" in October 1973 in an effort to change the composition of the USI Board of Directors and provide for a new president, the defendant Billera terminated plaintiffs' employment pursuant to a scheme by him to perpetuate his control of USI and

thus interfere with the plaintiffs' exercise of their rights as stockholders and to deter others from doing likewise. Plaintiffs seek reinstatement, compensatory damages, punitive damages of $1,000,000 against Mr. Billera, another $1,000,000 punitive damages from Mr. Billera in favor of USI, injunctive relief against any similarly motivated terminations or threats of termination in the future.

The defendants have filed a verified answer denying the fundamental allegations of the complaint, and a counterclaim alleging that plaintiffs committed manifold violations of Section 14(a) of the Securities Exchange Act of 1934 and of the proxy solicitation rules.

The plaintiff Tasner in his amended and supplemental complaint alleges, *inter alia*, the following facts:

*Count I*

1. In October, 1973, at a meeting held in Chicago, Illinois, plaintiff agreed with other persons to become members of the USI Stockholders' Committee (the "Committee"). Tasner has at all times been and now is the Chairman of the Committee. The Committee's members are stockholder-managers of USI, i. e., present or former USI business or division managers who have substantial stock investments in USI. Members of the Committee were and are gravely concerned with the recent declines in USI's earnings and market prices for USI's Common Stock.

2. On or about January 3, 1974, members of the Commiteee met with defendant Billera and other directors of USI in order to consider a possible joint program for the selection of a new Chief Executive Officer of USI. No agreement was reached for such a program. Billera was aware, at the time of and prior to said meeting, that in the absence of such an agreement, the Committee contemplated a proxy solicitation among the stockholder-managers of USI and substantial USI stockholders who own at least 15,000 shares of USI Common Stock or an equivalent amount of USI Preferred Stock, and that a more widespread solicitation of proxies was not excluded.

3. On January 18, 1974, at a meeting held in Chicago, Illinois, Gordon Walker, Vice President of USI, advised Tasner that, although Tasner's operation of his USI Division had been excellent, it was the decision of defendant Billera that, because of Tasner's participation in the Committee, Tasner's services as an employee of USI were terminated, effective immediately, and that Tasner should not enter any of the premises of USI. Following said meeting, Tasner learned that guards had been placed in his office.

4. Billera also caused to be fired on that date Harry Fox ("Fox"), another leader of the Committee, who was the President of the Seaway Importing Division of USI and the owner of 59,850 shares of Common Stock of USI, solely by reason of his participation on and leadership of the Committee.

5. Billera's terminations of Tasner's and Fox's employment as aforesaid were wrongful and illegal. Tasner has a written employment contract with USI for a term of five years from July 15, 1969. Tasner has duly performed all of the terms and conditions of said employment agreement on his part to be performed.

6. Commencing at some time on or prior to January 18, 1974, and continuing to date, Billera has engaged, and he is now engaged, in a conspiracy with other officers and directors of USI to violate his fiduciary duties and to interfere with and infringe upon the aforesaid stockholder rights and interests of the plaintiff, the other members of the Committee and all stockholders of USI. The acts implementing such conspiracy include the wrongful and illegal terminations of employment. Such terminations were wholly without cause, were not in the corporate interest of USI, but were solely in the personal and individual interest of Billera in retaining his position of dominance at USI and in concealing

his participation in a misappropriation of USI's corporate and business opportunities. By such high-handed tactics and strong-arm methods, Billera sought and now seeks to deter other Committee members who are in the employ of USI from remaining active in the Committee lest they, too, be wrongfully ousted from their positions and guards placed in their offices. In the same way, Billera sought and now seeks through such wrongful and illegal conspiracy and terminations of employment to deter substantial stockholders of USI who have not yet joined the Committee from so joining or from giving the Committee their proxies.

7. The conspiracy, wrongful and illegal terminations of employment and violations of fiduciary duties alleged in the complaint have been engaged in by Billera intentionally, without legal cause or justification, with full knowledge of the contractual and stockholder rights and fiduciary duties being violated by Billera and with full knowledge of the rights of Tasner and the obligations of USI under the written employment contracts, the wrongful breaches of which were caused by Billera. Such conduct by Billera has been and is willful and malicious.

8. The conspiracy, wrongful and illegal terminations of employment and violations of fiduciary duties have been engaged in by Billera willfully and maliciously with the purpose and intent to interfere with, infringe upon and deter the exercise of the stockholder rights, including the voting rights and the rights to solicit proxies, of the plaintiff, the other members of the Committee and all stockholders of USI. This conduct by Billera has had such intended effects and will continue to have such effects unless and until restrained and enjoined by this Court first by preliminary injunction and then by permanent injunction. Such conduct by Billera has substantially and adversely affected the value and worth of the voting securities of USI held by plaintiff, by other members of the Committee and by all stockholders

of USI and will continue, until preliminary and permanent injunctive relief is granted herein, so to affect such secuties. The continuing injuries are alleged to be causing, and, unless restrained and enjoined by this Court, will continue to cause grave, immediate and irreparable damage to the rights of plaintiff, other members of the Committee and all stockholders of USI and to the value and worth of their voting securities of USI, the full nature and extent of which damages are and will be incapable of complete ascertainment or of full compensation in money damages.

9. Plaintiff has no adequate remedy at law.

*Count II*

1. This Count, as are Counts III through VII, is brought as a derivative and class action on behalf of plaintiff and all of the stockholders of USI similarly situated to enforce the rights of USI and all of its stockholders, USI having failed to enforce such rights. Plaintiff has not requested the directors or stockholders of USI to take action to enforce such rights because such requests would be futile. Defendant Billera, whose wrongdoings are central to this action, controls and dominates the Board of Directors, management, business and affairs of USI. In addition, a majority of the directors of USI may be subject to liability to USI and USI's stockholders for permitting or participating in the wrongful conduct by defendant Billera and others, and the concealments thereof. Any request by plaintiff as to the directors would be useless, futile and unavailing and would be refused or, if granted, the litigation would necessarily be under the control of defendant Billera who is and would be opposed to its success. Any appeal to stockholders would be equally vain so long as Billera engages in the conduct complained of, which conduct wrongfully and illegally interferes with, infringes upon and deters the ability of USI stockholders to exercise their rights free from the distortions caused by Biller's conduct.

Only by the granting of relief requested in this action can the voting and proxy solicitation processes of USI be enabled to proceed on a fair and proper basis.

2. Plaintiff is a substantial stockholder of USI and was a stockholder at the time of the wrongful and illegal conduct alleged. Plaintiff fairly and adequately represents the interests of all of the stockholders of USI similarly situated in enforcing the rights of USI. This action is not a collusive one to confer jurisdiction on any court which it would not otherwise have.

*Count III*

1. At some time prior to April 11, 1956, defendant Billera and other officers and directors of USI, or attorneys for USI, learned by reason of their positions with USI, of the availability for purchase of a tract of real estate located in the municipality of Rio Grande (near the City of San Juan), in the Commonwealth of Puerto Rico (the "tract of Puerto Rico Land"). Said tract contains an area approximately 769.9 acres and includes a large beach frontage which greatly enhances its value. At all times relevant herein, the tract of Puerto Rico Land has been suitable either for immediate development or for retention for subsequent development.

2. At all times relevant herein, the acquisition, retention and sale and/or development of said tract of Puerto Rico Land were activities which defendant USI was financially able to undertake; were activities which, considering the nature of the business opportunity presented by the availability of said tract of Puerto Rico Land and the nature and character of the business and plans of defendant USI, would have been of practical and financial advantage to defendant USI; and were activities which presented a business opportunity in which defendant USI had a reasonable expectancy.

3. Notwithstanding that they had obtained knowledge of the availability of said tract of Puerto Rico Land by reason of and in the course of their relationship to and employment by defendant USI, defendant Billera and said others wrongfully, illegally and in violation of their fiduciary duties as officers and directors of and attorneys for defendant USI, conspired with one another to appropriate, and did appropriate to themselves in the manner hereinafter alleged, the business opportunities with respect to said tract of Puerto Rico Land, which were and still are lawfully the property of USI.

4. Pursuant to the aforesaid conspiracy, and as one of the transactions appropriating to themselves business opportunities connected with said tract of Puerto Rico Land, defendant Billera and said others caused to be incorporated under the laws of the State of Delaware, on April 9, 1956, one Eastern Islands Trading Corporation ("Eastern Islands"), of which they and others acting in concert with them owned all of the equity and debt securities, and wrongfully, illegally, improperly and secretly caused Eastern Islands to acquire, for their use and benefit, said tract of Puerto Rico Land, for a purchase price of $135,000. Defendant Billera and said other officers and directors of USI thereby violated their fiduciary duty owed by them as officers and directors of USI to permit USI to purchase said tract of Puerto Rico Land, and therefore held their interests in said tract of Puerto Rico Land as trustees for USI.

5. Upon information and belief, in the incorporation of Eastern Islands and the purchase of said tract of Puerto Rico Land, defendant Billera and said others utilized, without intended or actual reimbursement of USI therefor, office and other facilities and resources of USI and/or services of attorneys and others compensated in whole or in part therefor by USI.

6. Following the incorporation of Eastern Islands and acquisition of said tract of Puerto Rico Land by Eastern Islands, defendant Billera caused USI to make available office facilities and other

resources for the conduct of the business and corporate affairs of Eastern Islands, upon information and belief, without intended or actual full reimbursement of USI therefor, including but not limited to:

(a) office and clerical facilities at the Corporate Headquarters of USI; and

(b) office and clerical facilities at, and legal and other services of, offices of attorneys for USI.

Upon information and belief, defendant Billera and said others obtained and utilized in the business affairs conducted in the name of Eastern Islands, and therefore for their own benefit, various other services for which, by reason of their position with USI and their ability to direct to those rendering such services the business of USI, they were charged less than the amounts customarily charged for such services.

7. On or about November 17, 1972, defendant Billera and said others transferred all of the securities of Eastern Island to Carmelita Beach Development Corporation, a corporation controlled by one David Rodriguez, receiving therefor, upon information and belief, not less than $500,900 in cash and $2,575,000 in the form of a promissory note of said Carmelita Beach Development Corporation, secured by a mortgage of the tract of Puerto Rico Land in favor of EITCO Service Corp., as mortgage servicing agent for defendant Billera and others, thereby breaching their fiduciary duty to USI and converting to their own use not less that $3,075,900 to which USI was and is lawfully entitled.

8. At all times relevant herein, defendant Billera and said others willfully and knowingly concealed from the shareholders of USI the existence and extent of the business opportunities available to USI in connection with said tract of Puerto Rico Land.

9. As a result of the appropriation by defendant Billera and said others of the corporate opportunity for USI to realize profits in connection with the tract of Puerto Rico Land, USI has sustained damages in the amount of not less than $3,075,900.

*Count IV*

1. In the actual or purported disposition of their direct or indirect beneficial interest in said tract of Puerto Rico Land by means of the sale to said Carmelita Beach Development Corporation of all of the stock of Eastern Islands Trading Corporation, defendant Billera and said others, throught the use of the mails and instrumentalities of interstate commerce,

a. employed a device, scheme and artifice to defraud USI; and

b. engaged in an act, practice and course of conduct which operated and operates as a fraud and deceit upon USI,

in connection with said sale of the stock of Eastern Islands Trading Corporation, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities & Exchange Commission promulgated thereunder, 17 C.F.R. § 240.10b–5.

*Count V*

1. On November 17, 1972, when defendant Billera and said others sold all of the securities of Eastern Islands to Carmelita Beach Development Corporation, thereby transferring to Carmelita Beach Development Corporation the beneficial ownership of the tract of Puerto Rico Land held in the name of Eastern Islands, the true value of said tract of Puerto Rico Land was not less than $15,000,000.

2. As a result of the appropriation by defendant Billera and said others of the corporate opportunity for USI to realize such profits in connection with the Puerto Rico Land, USI has sustained damages in the amount of not less than $15,000,000 and for plaintiff's costs and reasonable attorneys' fees herein.

*Count VI*

1. In the actual or purported disposition of their direct or indirect beneficial

interest in said tract of Puerto Rico Land by means of the sale to said Carmelita Beach Development Corporation of all of the stock of Eastern Islands Trading Corporation, defendant Billera and said others, through the use of the mails and instrumentalities of interstate commerce,

a. employed a device, scheme and artifice to defraud USI; and

b. engaged in an act, practice and course of conduct which operated and operates as a fraud and deceit upon USI,

in connection with said sale of the stock of Eastern Islands Trading Corporation, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities & Exchange Commission promulgated thereunder, 17 C.F.R. § 240.10b–5.

### Count VII

1. Plaintiff brings this Count VII derivatively on behalf of USI and on his own behalf and on the behalf of the class of all holders of voting securities of defendant USI entitled to direct the voting of such securities at the 1970 through 1974 annual meetings of shareholders of USI to obtain relief for violations by defendant Billera with respect to Proxy Statements for said meetings, under Section 14(a) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78n(a) and the Rules and Regulations of the Securities and Exchange Commission promulgated thereunder.

2. On March 22, 1974, defendant Billera caused to be mailed to holders of voting securities of USI a Proxy Statement which contained the following and no other references to the interest of defendant Billera in the tract of Puerto Rico Land:

"In 1972 all of the stock of a real estate company in which Mr. Billera held an equity interest of approximately 9.5% was sold to a nonaffiliated corporation for a cash down pay-ment of approximately $500,900 and a purchase money mortgage note in the face amount of $2,575,000. In 1973, after the note had been reduced to $2,430,000, the purchaser applied for and obtained a mortgage loan from Caribbean Industrial Credit Corporation, a finance subsidiary of the Corporation engaged in making commercial loans. The proceeds of the borrowing ($3,384,000) were used, in part to prepay the purchase money mortgage note, and are repayable, together with interest of $1,316,000 in May, 1975. . . .

Information as to transactions between the Corporation (and its subsidiaries) and individuals serving as directors and officers of the Corporation has been set forth above only for those portions of the relevant periods during which such individuals so served."

Proxy Statements completely omitting any reference to the interest of defendant Billera and other officers and directors of USI in the tract of Puerto Rico Land had been mailed to plaintiff Tasner and other holders of the voting securities of USI to solicit proxies for the election of defendant Billera as a Director of USI and for other matters on or about March 15 of each of 1970, 1971, 1972 and 1973.

3. The 1974 Proxy Statement, describing the interest of defendant Billera in the tract of Puerto Rico Land, contained a statement which, at the time and in the light of the circumstances under which said statement was made, was false and misleading with respect to material facts, and omitted to state material facts necessary in order to make said Proxy Statement not false and misleading in that, among other matters:

a. the said Proxy Statement omitted to state that defendant Billera and other officers and directors and attorneys of USI had unlawfully and improperly appropriated to their own benefit business oppor-

tunities and profits in connection with said tract of Puerto Rico Land;

b.  said 1974 Proxy Statement omitted to state that, in connection with the acquisition and nominal disposition by defendant Billera and said other officers and directors and attorneys for USI, defendant Billera and such other persons had become jointly and severally liable to USI in an amount of not less than $15,000,000;

c.  said 1974 Proxy Statement omitted to state that said nominal disposition by defendant Billera and · said other officers and directors and attorneys for USI, as described in the 1972 Proxy Statement, was a sham transaction and that, pursuant to undisclosed arrangements with David Rodriguez, defendant Billera retained an interest in profits to be realized subsequently in connection with said tract of Puerto Rico Land, all in violation of SEC Rule 14a–9, 17 C.F.R. § 240.14a–9.

In addition, the USI Proxy Statements by which the defendant Billera and others submitted proxies for the election of directors and other matters at the annual meetings of shareholders of USI for the years 1970 through 1973, omitted to state the material facts referred to in subparagraph (a.) above, in violation of said SEC Rule 14a–9.

4.  Defendant Billera fraudulently solicited proxies through the use of said Proxy Statements knowing that they were false and misleading with the intent to mislead holders of voting securities of USI, as to his fitness for election as a director and officer of USI, and voted proxies so solicited for his election as a director of USI.

5.  Upon information and belief, the holders of voting securities of defendant USI would, if the USI Proxy Statements for the annual meetings of shareholders for 1970 through 1974 had disclosed the true facts of defendant Billera's wrongful acquisition of his interest in said tract of Puerto Rico Land, have withheld proxies, which were given in reliance on the adequacy of said Proxy Statements to vote for the management slates of nominees for election of directors of USI elected at said meetings.

6.  Through said fraudulent omissions from and misstatements in said Proxy Statements which he published in order to obtain election as a director of USI, and in order to be elected an officer of USI, Billera has illegally and wrongfully obtained compensation and other benefits having an aggregate value in excess of $1,250,000.

7.  By reason of the material omissions and misstatements in said Proxy Statements, plaintiff Tasner and all other holders of voting securities of USI have been and will, unless this Court grants the injunctive and other relief herein prayed for, be further irreparably injured, harmed and damaged through the continuation in office of directors of USI elected illegally by means of said Proxy Statements.

The plaintiff, in support of his instant motion, contends that:

1.  The proposed pleadings would add new claims but not new issues to this action.

2.  The proposed pleadings set forth both supplemental claims and amended claims which are all closely related to the matters originally set forth herein.

3.  The 1974 fraudulent proxy solicitation should properly be allowed as one subject matter of a supplemental claim herein.

4.  Claims for relief based on the facts which were fraudulently concealed should be allowed as amendments to the complaint in this action.

5.  Defendants have demonstrated no prejudice from the granting of leave to file the proposed pleading.

The defendant, in opposition to the instant motion, contends that

1. Defendant would be severely prejudiced and justice would not be properly served by allowing the plaintiff to file the amended pleading.
2. The proposed new counts are not involved in or related to the present complaint. ·
3. Defendants are entitled to clarification of the status of plaintiff Fox.
4. The proposed amendments should not be allowed either as supplemental or amended pleadings.

On June 13, 1974 this Court ordered the plaintiffs to reply to the defendants' memorandum in opposition to the motion to amend specifying that plaintiffs

" . . . should precisely state why the instant amendment is required in the interests of justice and why the plaintiffs would be severely prejudiced by being required to file a new action rather than amendments to this action."

It is the opinion of this Court after carefully examining the relevant pleadings and memoranda submitted by the parties in support of their respective positions that the plaintiffs should not, in the interests of justice, be given leave to file the amended and supplemental complaint.

■ It is clear that Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be granted freely "when justice so requires". However, the allowance of amendments after a responsive pleading has been served is within the sound discretion of the trial court. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Komie v. Buehler Corporation, 440 F.2d 449 (9th Cir. 1971); PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,

417 F.2d 659 (9th Cir. 1969); Strauss v. Douglas Aircraft Co., 404 F.2d 1152 (2nd Cir. 1968); Vine v. Beneficial Finance Co., 374 F.2d 627 (2nd Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). It is well settled that such leave should be denied where the amendment would cause substantial prejudice to a party to the action. Strauss v. Douglas Aircraft Co., *supra*; Middle Atlantic Utilities Co. v. SMW Devel Corp., 392 F.2d 380 (2nd Cir. 1968); United States v. 47 Bottles,· More or Less, 320 F.2d 564 (3rd Cir. 1963), cert. denied in Schere v. United States, 375 U.S. 953, 84 S.Ct. 444, 11 L. Ed.2d 313 (1964).

It is clear to this Court that the proposed amended and supplemental complaint poses serious problems of prejudice to the defendants. This Court acknowledges that the plaintiffs have advanced an explanation for the proposed amended and supplemental complaint; however, the plaintiff's explanation does not cure the serious problem of prejudice to the parties of the instant action. Thus, there are two major reasons for denying the plaintiff leave to file the amended and supplemental complaint.

First, the instant amendments significantly alter the cause of action and seriously complicate and prejudice the issues to be litigated. The new counts, which plaintiff Tasner seeks to add are in essence two: (1) a derivative claim against Billera for $20,000,000 for alleged appropriation of a corporate opportunity, and (2) a claim for the setting aside of the 1974 election of directors and the calling of a new election, based on alleged proxy rule violations consisting of the failure to disclose the alleged appropriation of the corporate opportunity.[1] These new claims, based upon a 1956 purchase of land in Puerto Rico and its value when sold in 1972, apparently have nothing whatever to do

---

1. The plaintiff asserts that the new claims are already involved because an issue in this action is whether Billera had a corrupt personal interest, the continued concealment of which motivated his effort to thwart a proxy solicitation. While paragraphs 9, 11 and 13 of the original complaint have some broad allegations the precise issue raised by the new counts are not clearly present in the original complaint.

with the present action and have no relationship whatever with the Northern District of Illinois.[2]

■ Certainly an amended and supplemental complaint should not be used as a subterfuge for bringing a totally unrelated and foreign cause of action into a forum which may appear to be more appealing to the plaintiffs.

The new derivative claims allege that defendant Billera "and other officers and directors of USI or attorneys for USI" committed the uselessness of a demand on USI's Board of Directors and states that "[i]n addition, a majority of the directors of USI may be subject to liability to USI and USI stockholders for permitting or participating in the wrongful conduct by defendant Billera and others, and the concealment thereof, as hereinafter alleged". It is significant that the plaintiff Tasner has not sought to make any of the participants in the venture, or any of the other directors, parties to this action, despite the extraordinarily large sums which the plaintiff is seeking individually from defendant Billera. The omission of these parties is not in the best interest of defendant USI, its shareholders or the just and proper disposition of these new claims. This also is prejudicial to defendant Billera in that it focuses solely on him as the target defendant. Further, if the additional proper parties were added to the instant action there may be serious jurisdictional problems raised since the action is allegedly based upon the Puerto Rican claim and has no relation to the instant original complaint and indeed has allegedly no significant contact with the Northern District of Illinois. It is clear that the plaintiff's amended and supplemental complaint not only obfusciates the issues of the original complaint and seriously complicates the instant litigation but also seriously prejudices the parties to the action,[3] and the new issues to be litigated.

Second, the defendant USI and its shareholders are seriously prejudiced by the plaintiff Tasner's failure to properly comply with Rule 23.1 of the Federal Ruels of Civil Procedure.

Rule 23.1 of the Federal Rules of Civil Procedure requires that a disgruntled shareholder must show either that he exhausted all intracorporate means of redress or, alternatively, why such efforts would be futile. Rule 23.1 embodies the common law requirement that before a shareholder derivative action may proceed, demand must be made on the directors and, if necessary, the other shareholders so that the corporation itself may have the opportunity to institute

2. The defendants raise an interesting question of whether personal jurisdiction can be obtained over Billera in the Northern District of Illinois with respect to the derivative claims. This Court need not pass on this question at the present time.

3. On the plaintiffs side one of the changes in the proposed amended and supplemental complaint was the purported elimination of Harry Fox as a named plaintiff without any clear indication of Mr. Fox's consent, and without specific leave of this Court. The plaintiff Tasner merely asserts that the action will "remain pending" as to Fox and that the proposed amendments merely add additional claims for relief sought by Tasner alone. However, the proposed amended and supplemental complaint, which is complete and contains no reference to the original pleading, eliminates Fox from the caption as a party plaintiff, eliminates ·every reference to Fox as a party, and deletes paragraph 2 of the original complaint describing Mr. Fox as a named plaintiff, paragraph 10 of the original complaint describing the termination of Fox's employment and most of paragraph 11 of the original complaint describing Fox's employment agreement and alleging his due performance thereof. All of this is replaced by a new paragraph 11 referring briefly to the termination of Harry Fox "another leader of the Committee". Mr. Fox is also, of course, eliminated from the prayer for damages and reinstatement. It is clear that the proposed amended and supplemental complaint supersedes the prior complaint and completely eliminates the original complaint from the instant litigation. See Lubin v. Chicago Title and Trust Company, 260 F.2d 411 (7th Cir. 1958) ; Heckart v. Pate, 52 F.R.D. 224 (N.D.Ill.1971). The plaintiff Tasner has failed to adequately explain why the plaintiff Fox is not potentially prejudiced by the amended and supplemental complaint.

the action.[4] Under Rule 23.1 such a demand is excused only if the complaint, which must be verified, alleges with particularity the reasons for not making the effort.

It is well settled that the question of whether a shareholder should be required to make a demand as a prerequisite to maintaining a derivative action is addressed to the sound discretion of the court, and ordinarily, the court determines this question on the basis of the allegations of the complaint. Fields v. Fidelity General Insurance Company, 454 F.2d 682 (7th Cir. 1971); DePinto v. Provident Security Life Insurance Co., 323 F.2d 826 (9th Cir. 1963), cert. denied 376 U.S. 950, 84 S.Ct. 965, 11 L. Ed.2d 969 (1964). Courts have generally been lenient in declaring that the plaintiff was not required to make a demand where it was clear from the relevant pleadings that such a demand would be a useless act or an idle ceremony or completely futile. See, e. g., Pioche Mines Consolidated, Inc. v. Dolman, 333 F.2d 257 (9th Cir. 1964), cert. denied 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965); Cohen v. Industrial Finance Corporation, 44 F.Supp. 491 (S.D.N.Y.1942); Winkelman v. General Motors Corp., 44 F.Supp. 960 (S.D.N.Y. 1942). However, courts have stubbornly refused to depart from the ritual of demand in some cases, despite the allegations of the plaintiff which state the utter absurdity of making the demand. For example, courts have held both that merely because a putative majority of the directors are alleged to be implicated in the fraud on the corporation, the necessity for a demand upon the entire board continues and that general aver-

ments of complicity on the part of the directors in the wrong against which relief is sought will not bring the plaintiff within the exception to the rule. See Watson v. United States Sugar Refinery, 68 F. 769 (7th Cir. 1895); Ziegler v. Lake St. El. Ry., 76 F. 662 (7th Cir. 1896). See also In re Kauffman Mutual Fund Action, 479 F.2d 257 (1st Cir. 1973), cert. denied 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973); Robison v. Caster, 356 F.2d 924 (7th Cir. 1966).

The plaintiff Tasner in paragraphs 20 and 23 of the amended and supplemental complaint alleges that a demand would be futile because the present Board of Directors is dominated and controlled by Billera whose conduct is the subject matter of the instant action.

In appraising the sufficiency of the allegation on this point of potential prejudice to defendant USI and its shareholders the Court must take into account the fact that, for all that appears in the record, it would have been a very simple matter for the plaintiff to make a demand upon the directors. This could have been done, for example, by simply mailing a copy of the complaint to the Board of Directors with a letter advising them that, unless the corporation enforced its right within a reasonable time, the plaintiff would undertake to do so on its behalf.

There is also the practical issue of whether the ends of justice and orderly procedure will be served better by enabling a minority stockholder, through the use of vague allegations such as in the instant amended and supplemental complaint, to impose on the defendants

---

4. This Rule is the cumulation of three previous efforts to regulate the institution of derivative shareholders' actions in federal courts. In 1882 the United States Supreme Court, immediately after its decision in Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827 (1882), adopted Equity Rule 94 as an attempt to state in definite form the holding of that case. In 1912 the United States Supreme Court modified that rule slightly

when it promulgated Equity Rule 27 which added the phrase "or the reasons for not making such effort". Equity Rule 27 applied only to "corporations". Former Rule 23(b), promulgated in 1937, made some verbal changes which enlarged its scope so that it applied to all associations, incorporated or unincorporated. Rule 23.1 substantially restates the principles of Rule 23(b).

and the Court the necessity of a long and complicated trial which must result in dismissal if the Court finds that the defendant Board of Directors was not in fact dominated and controlled by some allegedly errant defendant directors; or, on the other hand, whether those ends will be served better by adherence to a rule which would require the plaintiff Tasner, before filing suit, to ascertain (by means of the simple procedure outlined above) whether the corporation can be induced to bring the action.

It appears that the proper approach with the least possible prejudice to USI and its shareholders is that if there is any chance that the corporation will agree to the request, it, rather than an individual shareholder, ought to be given the opportunity to sue. This approach is preferrable for the following reasons: First, the corporate officers and directors will undoubtedly be in possession of more information than is necessary to frame the complaint properly and to pursue the action more efficiently. Second, the corporation generally will have greater financial ability to prosecute the suit with those legal resources appropriate to the magnitude of the claim. Third, the directors and officers of the corporation will have a fiduciary duty (with attendant legal liabilities) to the corporation and all of its shareholders to act in their interests in the maintenance of the action, whereas an individual shareholder has no such obligation. If the plaintiff's proposed suit appears meritorious, this same fiduciary duty will obligate the directors to pay heed to the demand.

If the demand is to be excused merely because some but not a majority of the directors allegedly participated, the same could be said with respect to those who failed to oppose or indeed, who, as new directors, had merely neglected to take action against their predecessors. If by plaintiff's merely alleging error, the directors are to be presumed incapable of exercising sound business judgment, Rule 23.1 would become virtually meaningless—a stockholder would be entitled to try the case on the merits to show that he had a right to bring it. Such an approach would be contrary to the spirit and letter of Rule 23.1.

Rule 23.1 also requires that plaintiff fairly and adequately represent the interests of all shareholders similarly situated. Given the instant action's history of intense and somewhat strongly contested issues it is the opinion of this Court that this difficult case may not be the appropriate action to properly represent USI and its shareholders' newly found claims.

A large part of the complaint consists of conclusory allegations. Plaintiff, a shareholder, is not in a position to have much personal knowledge of the facts involved, nor does he have direct and immediate access to the books and records of the corporation. In these circumstances the preferrable course is for the directors to be given the first chance to bring the action so that it can be supervised by persons with a greater knowledge of the facts and easier access to information.

In the case of a stockholder's derivative suit, the cause of action does not belong to the stockholder; it belongs to the corporation. The wrong which the suit seeks to redress is one which the corporation has sustained. It is clear, given the present posture of the pleadings, that the new derivative claims alleged in the plaintiff's amended and supplemental complaint pose a serious problem of unjust prejudice to the interests of USI and its shareholders.

Accordingly, it is hereby ordered that the instant motion for leave to file the amended and supplemental complaint is denied.