**Sal D'ACQUISTO, Tony Deseno, Patrick Vivirito and Richard Filas, individually and on behalf of all those similary situated, Plaintiffs,**

v.

**Harold WASHINGTON, Mayor of the City of Chicago, The City of Chicago, a municipal corporation, Fred Rice, Superintendent of the Chicago Police Department, and the Police Board of the City of Chicago Corporation, Defendants.**

**No. 85 C 1101.**

United States District Court, N.D. Illinois, E.D.

Nov. 9, 1990.

Joseph V. Roddy, Michael John Madden, Thomas G. Draths, Thomas J. Pleines, Law Offices of Joseph V. Roddy, Chicago, Ill., for plaintiffs.

City Corp. Counsel, James Convery, James D. Montgomery, Darka Papushkewych, Katrina Abel, Asst. Corp. Counsels, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

In the instant case, brought pursuant to 42 U.S.C. § 1983, several officers of the Chicago Police Department challenge the constitutionality of the procedures used when officers are suspended incident to the filing of internal departmental charges, particularly when the officers suspended are the subject of an investigation that could lead to both criminal and departmental charges. Having failed in their earlier motion to dismiss the complaint, *D'Acquisto v. Washington*, 640 F.Supp. 594 (N.D.Ill. 1986), the defendants moved for summary judgment. Before this court could rule on defendants' motion, however, the parties entered into a joint stipulation. According to that stipulation, the sole remaining issue is whether the procedures in question, either facially or as applied, deprive officers suspended under them of their property interest in their jobs without due process under the Fourteenth Amendment, or in violation of Illinois law. With regard to this remaining issue, the parties have expressly agreed that a declaratory judgment setting forth this court's legal conclusions and the parties' respective rights thereunder shall be the only form of relief available.

With this stipulation in place, defendants again move for summary judgment on the merits of plaintiffs' claims. In addition, defendants assert that Officers Sal D'Acquisto and Tony Deseno, the initial named plaintiffs, are no longer properly before this court as parties and that the claims of the remaining plaintiffs must be dismissed as moot. For the reasons stated below, this court concludes as a preliminary matter that Officers D'Acquisto and Deseno—although their situations may be considered as illustrative—are no longer parties to this litigation and that the claims of the remaining plaintiffs are not moot, despite the resolution of their underlying administrative actions. On the merits, this court grants defendants' motion for summary judgment on plaintiffs' federal claim and dismisses the remaining state law claim for lack of a federal question.

## BACKGROUND

In light of our previous opinion, we review the procedural and factual history of this case to the extent it bears upon the issues before it. Under Ill.Rev.Stat. ch. 24, ¶ 10-1-18.1,

> no officer or employee of the police department ... whose appointment has become complete may be removed or discharged, or suspended for more than 30 days except for cause upon written charges and after an opportunity to be heard in his own defense by the Police Board....
>
> Upon the filing of charges for which removal or discharge, or suspension of more than 30 days is recommended a hearing before the Police Board shall be held.

The Chicago Police Board has promulgated procedures pursuant to this provision for the suspension and/or discharge of police officers. These procedures contemplate four distinct situations, including suspension, emergency suspension, filing of departmental charges with the Police Board that may lead to suspension or discharge,

and suspension incident to filing of departmental charges. Plaintiffs challenge the procedures applicable to the last of these situations.

Initiation of formal departmental discipline falls within the discretion of the Superintendent of Police. Certain procedures accompany implementation of different disciplinary situations. Mere suspensions cannot be implemented unless the officer consents or the Police Board reviews and approves the action. Although emergency suspensions may be implemented immediately, they must receive preliminary review within seven days by a hearing officer or a Police Board member, and must be reviewed by the full Board within 30 days. If departmental charges are filed, but the officer remains on duty, the Board must hear the charges within five to 30 days after the officer is notified.

Under Police Board Rule IV–D, however, these procedures do not apply if suspension is imposed incident to the filing of departmental charges seeking separation or suspension in excess of 30 days. Such a suspension has no time limit; rather, it continues "pending the disposition of charges." Although a hearing officer or Board member must review the suspension within seven days of its initiation, that review, as defendants concede, is *ex parte*, with no involvement by the suspended officer. The officer eventually receives a full evidentiary hearing before the Police Board on both the charges against him and the propriety of the suspension. There is, however, no set time by which this hearing must occur

and continuances are granted to both sides; the officers, meanwhile, remain suspended.

Pursuant to the Superintendent's General Order 82–14, officers under investigation for wrongdoing are subject to "interrogation" (Gen.Order 82–14, Add. 3, ¶ II(C)(3)). Investigations following a complaint apparently are conducted along one of two tracks, depending upon the probability of criminal prosecution. As a result, officers facing investigation do not necessarily have a right to remain silent. If the allegation indicates that criminal prosecution is probable, the accused officer is notified of his criminal rights, including the privilege against self-incrimination.

If the allegation indicates that the case is likely to result in a recommendation for separation from service but criminal prosecution is not probable, however, the accused officer is notified of his administrative proceedings rights, which he must read and acknowledge prior to interrogation (Gen.Order 82–14, Add. 3, ¶ II(C)(4)(a)(2)). Officers whose cases are handled under administrative proceedings rights do not have a right to remain silent. Any statements made in the course of interrogation, however, may not be used against the officer in the event of future criminal prosecution.[1] Although past practice apparently has varied, once an officer is notified of his administrative proceedings rights, he must cooperate with the investigation and respond to questioning. Refusal to cooperate subjects the accused officer to charges before the Police Board seeking his separa-

---

1. The Administrative Proceedings Rights provide that

1. Any admission made in the course of this hearing, interrogation or examination may be used as the basis for charges seeking your removal or discharge or suspension in excess of 30 days.
2. You have the right to counsel of your choosing to be present with you to advise you at this hearing, interrogation or examination and you may consult with him as you desire.
3. You have a right to be given a reasonable time to obtain counsel of your own choosing.
4. *You have no right to remain silent.* You have an obligation to truthfully answer questions put to you. You are advised that your statements or responses constitute an official police report.

5. If you refuse to answer questions put to you, you will be ordered by a superior officer to answer the questions.
6. If you persist in your refusal after the order has been given to you, you are advised that such refusal constitutes a violation of the Rules and Regulations of the Chicago Police Department and will serve as a basis for which your discharge will be sought.
7. *You are further advised that by law any admission made by you during the course of this hearing, interrogation or examination cannot be used against you in a subsequent criminal proceeding.*
(emphasis added).

tion from service and suspension pending disposition of those charges.

Police officers Patrick Vivirito, Richard Filas, Thomas McGrath, Ronald Armata, Walter Boddie, Sal D'Acquisto and Tony Deseno each were suspended incident to the filing of charges with the Police Board for refusing to answer questions put to them in the course of an administrative investigation. Officers Vivirito and Filas were notified on October 29, 1985, that the Department was investigating a complaint that they had accepted a bribe in exchange for failing to issue a traffic citation.[2] On November 21, 1985, the two officers, represented by counsel, signed documents acknowledging the allegations against them and notification of their administrative proceedings rights. Although advised that the Department would not seek criminal prosecution, and despite a direct order to answer questions, Officers Vivirito and Filas refused to answer any questions (def. exhs. 6A, 6B; def. Madsen aff.). On March 12, 1986, the Department charged them with violation of departmental rules for refusal to cooperate with an internal investigation. They were suspended one day later, pending disposition of these charges by the Police Board. A full evidentiary hearing was held on April 29, 1986 (def. exhs. 8A, 8B). The Board found the evidence insufficient to sustain the charges and reinstated the officers with full seniority, pay and benefits for the period of their suspension (def. exhs. 8A, 8B).

Officer McGrath also was investigated following a complaint that he had accepted a bribe.[3] On December 9, 1985, represented by counsel, he signed documents notifying him of the allegations and of his administrative proceeding rights (def. exh. 10). At this time, although informed that the Department was not conducting a criminal

investigation and despite a direct order to answer questions, Officer McGrath refused to respond (def. exh. 10; Madsen aff.). On May 28, 1986, the Department charged him with violations of several departmental rules for his refusal to cooperate (def. exh. 11) and suspended him the next day pending disposition of the charges by the Police Board. The Board held a full evidentiary hearing on June 18–19, and on August 14, 1986, found Officer McGrath not guilty and restored him to duty (def. exh. 12).

Officers Armata and Boddie were investigated following a complaint that they had physically and verbally abused an arrestee. On October 28, 1985, they each signed documents notifying them of the allegations and of their administrative proceeding rights (def. exhs. 5C, 5D). Although informed that the Department was not conducting a criminal investigation, and despite a direct order to answer questions, Officers Armata and Boddie refused to respond (def. exhs. 5C, 5D; def. Byrne aff.). On June 5, 1986, the Department charged them with violations of several departmental rules for their refusal to cooperate (def. exhs. 7C, 7D; Iris aff.). They were suspended two days later, pending disposition of the charges by the Police Board (def. exhs. 7E, 7F). The Board held a full evidentiary hearing on July 15, 1986, ruled on September 4 of that year that the evidence did not sustain the charges and restored them to duty (def. exhs. 8C, 8D).

With regard to each of these five officers, none of the underlying complaints that had formed the basis for the initial investigations was the basis for suspension and none was sustained. The charges filed with the Police Board, and the suspensions incident to those charges, related solely to their refusal to respond to questioning dur-

---

2. Although informed of their criminal rights at this early juncture in the investigation, Officers Vivirito and Filas apparently felt compelled to provide statements denying the allegations to avoid losing their jobs (Def.Ex. 4A, 4B; Pl.Ex. 5). They requested time to secure legal counsel. On November 15, 1985, the officers were again informed of the allegations against them. This time, they were informed of their administrative proceedings rights and again were granted time to secure legal counsel (Def.Ex. 5A, 5B). No statement was taken.

3. Officer McGrath was first notified of the allegations against him and his administrative proceedings rights on November 26, 1985. He requested time to secure legal counsel. No statement was taken.

ing interrogation, in violation of a direct order.

Only those Board charges filed against Officers D'Acquisto and Deseno were based upon underlying allegations of wrongdoing rather than their refusal to cooperate with a departmental investigation (def. Iris aff.).[4] Indicted by a federal grand jury on January 15, 1985, on charges of accepting bribes in exchange for altering the result of hit-and-run accident investigations, they were suspended by the Superintendent under emergency procedures the next day. Upon the filing of charges with the Police Board seeking their separation, their suspensions were continued for the duration of the proceedings (pl. exh. 2). Although Officer D'Acquisto's Board hearing was initially scheduled for February 28, 1985, it was not held until May 14 of that year, following a series of continuances (pl. exh. 13). Officer Deseno's Board hearing was similarly delayed from March 4, 1985 to September 17 of that year (pl. exh. 12). Because of the initial emergency basis for their suspensions, they received no opportunity to be heard on the underlying allegations or the merits of their suspensions until their full Board hearings. The Police Board found Officer Deseno guilty and discharged him from the Department on October 28, 1985 (def. Oct. 1987 reply mem. exh. E). The charges against Officer D'Acquisto were dismissed on May 14, 1985 (def. Oct. 1987 reply mem. exh. F).

## DISCUSSION

### I. *Preliminary Issues*

#### A. *Mootness*

■ As a threshold issue, this court must determine whether plaintiffs' claims are moot. Defendants contend that this action must be dismissed because the underlying disputes between plaintiffs and the Department have been resolved, with all but Officer Deseno being restored with full back pay and seniority. A case must present a live controversy not only at its

inception but at each point in the course of litigation. *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Nonetheless, dismissal for mootness is inappropriate in those cases that are "capable of repetition, yet evading review." *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) (quoting *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)).

Plaintiffs' claim falls within this exception. Despite their eventual restoration to service, the named plaintiffs *were* deprived for a time of their property interest in their jobs. *D'Acquisto,* 640 F.Supp. at 607. In order to determine whether plaintiffs were accorded due process, this court must consider the nature and quality of the procedures accompanying that deprivation as they were applied to plaintiffs—from pre-deprivation interrogation to post-deprivation evidentiary hearing. To hold that the claims of plaintiffs and those similarly situated were mooted by completion of the procedures they challenge would effectively eliminate the possibility of any "as applied" challenge to those procedures. Dismissal of this action on grounds of mootness would be inappropriate under the circumstances.

### B. *Which Plaintiffs are Properly before the Court?*

■ As noted previously, more than one set of officers has prosecuted this class action, rendering the procedural posture of this case "a bit bewildering." The passage of time seems only to have added to the confusion. Defendants contend that although Officers D'Acquisto and Deseno were named plaintiffs in the original complaint filed in this case, they no longer may properly be considered parties to the action and no evidence concerning their suspensions may be used to demonstrate the existence of a genuine issue of material fact. Plaintiffs, understandably, vehemently dispute this contention.

**4.** In light of our ruling in Section I.B., *infra,* that the claims of Officers D'Acquisto and DeSeno are no longer properly before this court, the different nature of their cases has no effect on the outcome of defendants' motion.

The relevant procedural history may be summarized as follows. Officers D'Acquisto and Deseno filed both the initial complaint and an amended complaint as two of three named plaintiffs.[5] Subsequently, however, a second amended complaint was filed with Officers Vivirito and Filas, who never sought leave to intervene, as named Plaintiffs. This second amended complaint failed to name Officers D'Acquisto and Deseno as parties, contained no allegations relating to their suspensions, and incorporated none of their prior pleadings. Defendants made their motion to dismiss at this point. Under the circumstances as they existed at the time, this court found it appropriate to treat Officers D'Acquisto, Deseno, Vivirito and Filas as named plaintiffs for purposes of defendants' motion. In the wake of our ruling denying the motion, Officers Vivirito and Filas filed a third amended complaint expressly incorporating their second amended complaint and adding Officer McGrath as a named plaintiff. Like the second amended complaint, however, the third amended complaint made no allegation of fact concerning Officers D'Acquisto and Deseno. By virtue of the parties' stipulation, Officers Armata and Boddie became additional named plaintiffs.[6]

Plaintiffs deny any intention to dismiss or withdraw Officers D'Acquisto and Deseno as parties.[7] Nonetheless, it is well settled within this circuit that "an amended complaint in itself and making no reference to nor adopting any portion of a prior complaint renders the latter *functus officio*." *Lubin v. Chicago Title and Trust Co.*, 260 F.2d 411 (7th Cir.1958); *see Tasner v. Billera*, 379 F.Supp. 815 (N.D.Ill.1974); *Heckart v. Pate*, 52 F.R.D. 224 (N.D.Ill.1971). Having filed two amended complaints making no reference to nor incorporating any portion of the initial complaints filed by Officers D'Acquisto and Deseno, plaintiffs effectively have removed all allegations relating to the suspensions of those officers from the scope of their case. While the summary judgment evidence concerning these two officers may be useful from a purely illustrative perspective, this court will not consider it in determining whether plaintiffs have successfully demonstrated the existence of a genuine issue of material fact.

## II. *Procedural Due Process Claim*

### A. *Summary Judgment Standards*

In considering defendants' motion for summary judgment, this court must determine whether the pleadings, affidavits, and other materials provided by the parties demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering whether the summary judgment evidence presents a triable issue, we draw all reasonable inferences in favor of the nonmoving party. *Cameron v. Frances Slocum Bank & Trust Co.*, 824 F.2d 570, 573 (7th Cir.1987).[8] An issue of fact is

---

**5.** The third, Officer John Novack, removed himself from the action a short time later.

**6.** Paragraph 5 of the joint stipulation provides that Officers D'Acquisto, DeSeno, Vivirito, Filas, McGrath, Armata and Boddie shall, for purposes of the stipulation, be referred to collectively as Plaintiffs. Plaintiffs assert that defendants are estopped by this provision from challenging Officers D'Acquisto and Deseno's standing as parties. Their assertion, however, ignores the final sentence of Paragraph 8, which provides that

[d]efendants by entering into this Stipulation neither waive nor relinquish any defense or objection to the claims herein reserved or to the standing or status of any person or party to assert any claim so reserved.

**7.** While defendants have filed an affidavit asserting that Plaintiffs intended their second amended complaint to supersede all prior complaints, plaintiffs have filed an affidavit to the contrary.

**8.** As a preliminary issue, defendants contend that they are entitled to summary judgment due to plaintiffs' failure to file a response to their Statement of Material Facts as to Which There is no Genuine Issue as required by Local Rule 12(m). Pursuant to Local Rule 12(m), all material facts set forth in a movant's statement are deemed admitted unless controverted by the opposing party's 12(m) statement. This court does not take lightly the procedural deficiencies of plaintiffs' summary judgment response. Nonetheless, the significance of the substantive issues involved suggests that this court should exercise

material "when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Puckett v. Soo Line L. R. Co.*, 897 F.2d 1423, 1425 (7th Cir.1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)).

### B. *Procedural Due Process*
#### 1. *Pre–Deprivation Opportunity to be Heard*

As already noted, plaintiffs held a property interest in their employment relationship with the Department. *D'Acquisto*, 640 F.Supp. at 607. Inasmuch as "any suspension without pay is a deprivation" from a constitutional perspective, regardless of whether the suspension leads to termination, *id.* at 610, this court has held as well that plaintiffs were entitled to "some kind of hearing" either immediately before or promptly following imposition of their suspension. *D'Acquisto*, 640 F.Supp. at 612–14.

■ The remaining issue thus becomes whether the procedures that accompanied plaintiffs' suspensions were constitutionally adequate in light of the particular circumstances. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). At the very least, plaintiffs were entitled to notice of the charges against them, an explanation of the Department's evidence, and an opportunity to respond thereto. In light of the fact that Departmental procedures guaranteed, and plaintiffs received, a post-deprivation, full evidentiary hearing before the Police Board, the required pre-termination "hearing" need not have been elaborate. *D'Acquisto*, 640 F.Supp. at 615; *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Nor is it necessary that it have

definitively resolve[d] the propriety of the discharge [or suspension]. It should be an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

*Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495.

As noted in this court's prior ruling, defendants admit that Rule IV–D's requirement that the Department undertake an *ex parte* review of suspension decisions within seven days of their implementation affords suspended officers no opportunity to be heard. As a result of defendants' admission, the issue of the adequacy of the procedural safeguards accompanying suspension revolves around the quality of the pre-deprivation investigative interrogation and whether it afforded these officers a meaningful opportunity to respond.[9]

Among the summary judgment evidence submitted by defendants are transcripts of the pre-deprivation investigative interrogation conducted with each plaintiff (def. exhs. 5C, 5D, 6A, 6B, 10). A close reading of these transcripts indicates each of the five named plaintiffs, represented by counsel, was advised of and signed a document acknowledging his administrative proceedings rights. The form signed by each officer plainly states not only that the officer being questioned has no right to remain silent, but also that any admission made in the course of the interrogation could not, by law, be used against him in a subsequent criminal proceeding (def. exhs. 5C, 5D, 6A, 6B, 9, 10).

Despite this acknowledgment, each officer refused to respond to questions regarding the underlying complaint on the grounds that his answers might tend to

---

its discretion to decide defendants' motion on its merits rather than on a technicality. *See Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990); *Aetna Cas. & Sur. Co. v. Spancrete of Illinois, Inc.*, 726 F.Supp. 204, 206 (N.D. Ill.1989).

9. Plaintiffs' summary judgment arguments concerning the constitutional sufficiency of the seven day, post-suspension review are thus irrelevant to the outcome of defendants' motion. If the pre-deprivation interrogation did not provide an adequate opportunity to be heard, then the *ex parte* review cannot save defendants' procedures. If, however, the interrogation was constitutionally sufficient, the *ex parte* review provides an extra safeguard above the constitutional minimum against erroneous deprivation.

incriminate him. He then was given a direct order to respond to questioning and was advised that violation of a direct order and refusal to cooperate with the investigation would lead to the implementation of disciplinary proceedings that could lead to his separation from service. Despite acknowledging their awareness of the consequences, each officer persisted in refusing to respond, at which point the investigating officer halted the interrogation (def. exhs. 5C, 5D, 6A, 6B, 9, 10).

Plaintiffs attempt to rebut defendants' summary judgment evidence by contending that defendants failed to follow their own administrative procedures with regard to obtaining written declinations of prosecution prior to interrogating the officers. As noted in our earlier decision, however, while public employees are entitled to an affirmative assurance of immunity before their employers may demand answers, this does not appear specifically to require communication from a prosecutor that prosecution is declined. *D'Acquisto*, 640 F.Supp. at 624.

Four of the named plaintiffs further allege, however, that certain actions taken by the Department confused them to the point that they were denied a meaningful opportunity to respond to the allegations against them.[10] Officers Vivirito and Filas allege that they refused to respond to questioning out of an overabundance of caution. Both officers were informed at their November 21 interrogation that the Department would not seek their criminal prosecution and acknowledged that they had been informed of and understood their administrative rights; nonetheless, they claim that they were confused as to whether they had the right to remain silent because the De-

partment's notice of allegations inadequately indicated whether the charges against them were criminal in nature and they previously had been informed of their criminal rights on October 29 (pl. exhs. 3A, 3B). Officers Armata and Boddie allege that they would have responded to questioning had they been informed that the United States Attorney's office had declined prosecution in their case. Summary judgment evidence indicates that the investigator who interrogated Officers Armata and Boddie had been informed of the declination but failed to inform the officers of this in the course of their interrogation (pl. exh. 9; *see also* def. exhs. 5C, 5D). Officers Armata and Boddie allege that this failure deprived them of a meaningful opportunity to respond.

Central to this court's analysis is the nature of the charges that led to the deprivations in question. Had plaintiffs been suspended in connection with the charges in the underlying substantive complaints against them (*i.e.*, bribery and excessive force), some issue of fact and law might remain as to whether the pre-deprivation investigative interrogation[11] provided the requisite opportunity to be heard. In each instance, however, the charges filed against the officer and the suspension imposed incident to the filing of those charges were premised *exclusively* on the officer's refusal to respond to questioning as ordered (def. exhs. 7A–7D, 11). The underlying complaints that had been the subject of the investigations in the first instance ultimately were found not to have been sustained and, as a result, never formed the basis of any of the charges or disciplinary actions at issue (def. Madden, Byrne, Iris affs.).[12]

---

10. Officer McGrath alleges that he refused to respond to questioning because an Assistant United States Attorney had told his attorney that he was the subject of possible criminal prosecution. Although he gave this reason in the course of interrogation, he has submitted no summary judgment evidence to substantiate his allegation that this conversation actually occurred.

11. Despite the fact that the Department's regulations refer to the investigative questioning sessions as "interrogations," Gen.Ord. 82–14, Rules

II(C)(3), II(C)(4)(a), defendants choose to label the sessions as "interviews." Their semantic choice has no impact on this court's consideration of the summary judgment evidence.

12. Unlike the remaining named plaintiffs, Officers D'Acquisto and Deseno initially were suspended pursuant to emergency procedures and, ultimately, *were* charged on the basis of the underlying allegations against them. The framework for analyzing whether departmental procedures as applied provided them due process would differ accordingly.

Officers Vivirito and Filas' allegations of confusion—emphasizing as they do the underlying bribery allegations to which they were asked to respond—fail to address the circumstances surrounding the charges that in fact led to their suspension. Their allegations, along with Officers Armata and Boddie's claims that they would have responded to questioning had they been informed that prosecution had been declined in their case fail to controvert the fact that each officer was informed of and acknowledged his understanding of his administrative proceedings rights, which included an affirmative grant of use immunity.

The proper frame of analysis is whether the officers had an opportunity to respond to the charges that led to their suspensions, *i.e.*, refusal to cooperate with an investigation. Assessed from this perspective, there is no issue as to whether these officers received due process. The summary judgment evidence indicates that each officer was placed on notice at the point at which his refusal to respond to questioning threatened deprivation of his property interest in his employment.[13] At this juncture, each officer was afforded the requisite opportunity to respond, *i.e.*, to explain his reasons for violating departmental rules by refusing to cooperate with an internal investigation. Each explained that he feared that any responses he might give might tend to incriminate him. Reading the summary judgment evidence in the light most favorable to plaintiffs, the conclusion remains inescapable that regardless of whether prosecution had been declined, each of the named plaintiffs was aware that he was obligated to respond to questioning or face suspension and/or the loss of his job.[14]

While this court still cannot state as a blanket rule of law that an interrogation equals a full and fair opportunity to present one's case, *D'Acquisto*, 640 F.Supp. at 617, as applied to the unique factual circumstances of this case, Plaintiffs were provided the "initial check against mistaken decisions" called for by *Loudermill*. *Cf. McLean v. Rochford*, 404 F.Supp. 191 (N.D.Ill.1975) (pre-*Loudermill* case holding that police officer suspended for refusal to answer questions in an investigative interrogation had been accorded pre-deprivation due process when informed during interrogation that failure to answer questions would lead to discipline and persisted in maintaining his silence).

### 2. Post–Deprivation Adversarial Hearing

■ Despite our conclusion as to the constitutional sufficiency of the investigative interrogation as a pre-deprivation opportunity to be heard under the limited facts of this case, plaintiffs' claim of unwarranted delays in their post-deprivation, full evidentiary hearing presents a distinct procedural due process issue on which defendants also have moved for summary judgment.[15]

As noted in our earlier opinion, the Supreme Court recognized in *Loudermill* that "[a]t some point, a delay in the post-termi-

---

**13.** Plaintiffs do not allege that being placed on notice in the course of, rather than prior to, their pre-suspension interview constituted a violation of due process, nor would such an allegation carry the day. *See Gniotek v. Philadelphia*, 808 F.2d 241, 244 (3d Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987); *Kelly v. Smith*, 764 F.2d 1412 (11th Cir.1985); *Brasslett v. Cota*, 761 F.2d 827, 836 (1st Cir. 1985); *Panozzo v. Rhoads*, 711 F.Supp. 941 (N.D.Ill.1989), *aff'd*, 905 F.2d 135 (7th Cir.1990).

**14.** Much of the material included with the motion and the response to it are irrelevant to the narrow issues here presented. That material indicates that the Department and representatives of police employees had a continuing disagreement over the necessary scope of protec-

tion before officers could be compelled to respond. The Department provided testimonial immunity. The representatives believed that insufficient, insisting on transactional immunity or at least an assurance that prosecution had been declined. That point was made, with varying degrees of clarity, when plaintiffs invoked their privilege. But the opportunity to make that point was obviously there, and whether or not that reason justified their refusals was what the post-deprivation hearings were all about.

**15.** As we noted in our previous opinion, delay of the post-deprivation hearing could constitute a due process violation in and of itself even if the pre-deprivation interrogation was an adequate first stage hearing. *D'Acquisto*, 640 F.Supp. at 617.

nation hearing would become a constitutional violation." 470 U.S. at 547, 105 S.Ct. at 1496. The Court emphasized, however, that the merits of a claim based on delay are not determined purely by the amount of time involved; rather, the underlying concern is whether the delay, if any, between the pre-deprivation (or prompt post-deprivation) hearing and the second-stage hearing was unreasonable. The relevant issue, therefore, is not the length of the delay, but rather why that delay occurred. *D'Acquisto*, 640 F.Supp. at 618.

It is undisputed that Officers Vivirito and Filas, who were suspended on March 13, 1986, received their evidentiary hearing on April 29, 1986; Officer McGrath, who was suspended on May 29, 1986, received his evidentiary hearing on June 18–19, 1986; and Officers Armata and Boddie, who were suspended on June 7, 1986, received their evidentiary hearing on July 15, 1986. Aside from evidence concerning the adversarial hearings of Officers D'Acquisto and Deseno, which this court will not consider as dispositive,[16] plaintiffs submit evidence of only one delay, in which Officers Vivirito and Filas' initial adversarial hearing, scheduled for March 26, 1986, was continued to April 29 at the Department's request after Vivirito and Filas' attorney announced at that time that they would forego discovery (pl. exh. 14). At most, this evidence indicates that a continuance was granted. Absent further evidence indicating that this continuance was unjustified, plaintiffs have failed to demonstrate the existence of a genuine issue of material fact so as to preclude summary judgment.

### III. *State Claim*

Having determined that defendants' motion for summary judgment should be granted, it is within this court's discretion to decline the exercise of pendent jurisdiction over plaintiffs' claim that the procedures in question violate Illinois state law either facially or as applied. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Giardono v. Jones*, 867 F.2d 409 (7th Cir. 1989). This court elects to exercise that discretion and accordingly dismisses plaintiffs' state law claim for lack of a federal question.

### CONCLUSION

Having concluded that Officers D'Acquisto and Deseno are no longer parties to this litigation, and that the claims of the remaining plaintiffs are not moot, defendants' motion for summary judgment on plaintiffs' federal claim is granted. Plaintiffs' remaining state law claim is dismissed.

---

**16.** Nor, were we to consider evidence concerning these officers for purposes of summary judgment could we say that plaintiffs have adequately demonstrated a genuine issue as to whether the delays were reasonable. Each officer's own counsel was responsible for at least half of the continuances granted in his case.

Officer Deseno's adversarial hearing was not held until September 17–18, 1985, some seven months after his suspension. In addition to several status hearings, his case was continued four times due to actions of his own counsel—once because he had not finished processing a request for discovery, twice because he failed to appear, and once because he requested a continuance—and was continued only three times due to actions of the Department's counsel—once because the Department had expected a different case to be called, once because the Department wished to file a motion regarding Deseno's fifth amendment rights, and once because the Department filed amended charges (pl. exh. 12).

Officer D'Acquisto did not receive his adversarial hearing until May 14, 1985, three months after his suspension. In addition to one status hearing, his hearing was continued once because Officer D'Acquisto was not present and once because the Department, involved in proceedings before this court in this matter, was unprepared (pl. exh. 13).