Mary **CZAJKOWSKI**, for herself and for next of kin Ruben Garza, Jr., her son, Plaintiffs,

v.

**CITY OF CHICAGO, ILLINOIS,** et al., Defendants.

No. 90 C 3201.

United States District Court, N.D. Illinois, E.D.

Dec. 3, 1992.

On Motion for Reconsideration Jan. 15, 1993.

Jan Susler, Jeffrey H. Haas, Janine L. Hoft, People's Law Offices, Chicago, IL, for plaintiffs.

Kelly R. Welsh, Patrick J. Rocks, Jr., Donald R. Zoufal, City of Chicago, Law Dept., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

## I. INTRODUCTION

Plaintiffs Mary Czajkowski and Ruben Garza, Jr. ("Garza Jr.")[1] brought this civil rights action against defendants City of Chicago, Leroy Martin, David Fogel, Gayle Shines, Ruben Garza ("Garza"), and Milan Hrebanek. Martin was Chicago's Superintendent of Police at the time of the incident central to this dispute. At that time, Fogel was the administrator of the Chicago Police Department's (the "Department") Office of Professional Standards ("OPS"). Shines was the administrator of OPS at the time the complaint was filed. Garza and Hrebanek were Chicago police officers at times relevant to this action.[2] Garza is the ex-husband of Czajkowski and father of Garza Jr. Presently pending is plaintiff Czajkowski's[3] motion for summary judgment on certain counts and defendants' (except Garza's)[4] cross motion for summary judgment on all the claims against them.

In the complaint, Czajkowski alleges that Garza subjected her to domestic violence and that the City condoned or encouraged that conduct. On June 21, 1988, Garza was in a police squad car with his partner, Hrebanek, when he stopped Czajkowski, who was driving a car with Garza Jr. as a passenger. At the time, Czajkowski and Garza were near the completion of divorce proceedings. In Count I, Czajkowski alleges that, during the June 21, 1988 stop, Garza scratched her chest with his car keys and choked her. Garza Jr. alleges that his father attempted to kidnap him. Plaintiffs claim that Hrebanek aided and abetted or conspired with Garza in committing this excessive force. It is also claimed that Hrebanek stood by and permitted his fellow officer to assault plaintiffs. Count II is a claim against the City, Martin, and Fogel that their failure to adequately discipline or supervise officers who commit excessive force or domestic violence contributed to causing the injuries alleged in Count I. Count III is a similar claim, but is specifically based on the policy and practice of maintaining a code of silence within the Department. Count IV is against Garza and Hrebanek and is labeled a state law claim for assault, battery, intentional infliction of emotional distress, and conspiracy to commit those torts. Count V is a respondeat superior claim against the City based on Count IV.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovants and all factual disputes resolved in favor of the nonmovants. *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing a lack of any genuine issue of material fact rests on the movants. *Id.* at

---

1. The claims of Garza Jr., a minor, are brought on his behalf by his mother, Czajkowski. For convenience, those claims will simply be referred to as the claims of Garza Jr.

2. Since the City of Chicago is named as a defendant, the official capacity claims against the other defendants will be dismissed. *See Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir.1987); *Kohn v. Mucia*, 776 F.Supp. 348, 355–56 (N.D.Ill. 1991). There is no claim against Shines in her individual capacity so she is dismissed from the case.

3. The motion is labeled as plaintiffs' motion for summary judgment, but the facts asserted pertain only to Czajkowski's claims.

4. Chicago, Martin, Fogel, and Hrebanek will be referred to collectively as the "represented defendants."

473. The nonmovants, however, must make a showing sufficient to establish any essential element for which they will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movants need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476–77 (7th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 [106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986); *id.* at 325 [106 S.Ct. at 2554] ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324 [106 S.Ct. at 2553]. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable

issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 [106 S.Ct. 1348, 1356, 89 L.Ed.2d 538] (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 [106 S.Ct. 2505, 2512, 91 L.Ed.2d 202] (1986).

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

Based on the June 21, 1988 conduct, Garza was convicted of misdemeanor battery. He was subsequently disciplined by the Department. The City did not provide representation for Garza in the present lawsuit. Early in this litigation, plaintiffs moved for entry of a default judgment against Garza. Garza appeared and the motion was denied. Garza moved for the appointment of counsel and that motion was denied for failure to satisfy the income requirements. Although he has personally appeared at some statuses and for his own deposition, if not other depositions as well, Garza has not filed an appearance form on his own behalf and he never filed an answer to the complaint. Plaintiff served her summary judgment motion on Garza, but he filed no response.

■ Although Garza is proceeding *pro se,* Czajkowski failed to advise him as to summary judgment procedures as is required by *Timms v. Franks,* 953 F.2d 281, 285–86 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992). Nevertheless, the merits of plaintiff's motion will be considered. An appendix to this opinion advises Garza of summary judgment procedures. After considering the appendix and today's opinion, to the extent Garza wishes to file a response to the summary judgment motion, he is granted leave to move for reconsideration of today's ruling within 28 days after the

date of today's order.[5] Since given the opportunity to file a response after being advised of summary judgment procedures, defendant will not be prejudiced by considering the present motion. *See Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 272 (7th Cir.1986); *King v. Rolm Co.,* 1992 WL 133023 *3 n. 1 (N.D.Ill. June 8, 1992).

■■■ On the present motion, summary judgment cannot be granted solely because Garza failed to respond. *Hibernia National Bank v. Administracion Central Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985); *Monroe v. Mazzarano,* 1992 WL 199829 *11 (N.D.Ill. Aug. 10, 1992). Instead, when the nonmovant fails to file a response, the court can take the movant's statement of facts as true and determine if those facts entitle the movant to judgment as a matter of law. *See* Local Rule 12(m); *Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989). The present case, however, also involves other parties who have responded to plaintiff's motion. To the extent factual materials and arguments provided by the represented defendants apply to the claims against Garza as well, they will be considered as to the claims against Garza.

### III. ESTOPPEL

#### A. *Garza's Criminal Trial*

■■■ The first issue to be considered is the collateral estoppel effect of Garza's criminal trial related to the June 1988 incident. Garza was charged with "committing the offense of Battery Simple in that he knowingly, intentionally, with-out legal justification, caused bodily harm to Garza Mary A. by forcefully grabbing her by the arm, scratching her on her chest with some keys and choking her in violation of Chapter 38 Section 12–3(a) Illinois Revised Statutes." Following a bench trial, Garza was found guilty of battery based on his scratching of Czajkowski's chest. The trial judge also found, "[a]s to the choking, I doubt that this lady was choked for two or three minutes and I really don't see any

convincing evidence that there was any bodily harm inflicted on her because of that."

This court must accord the decision in the state criminal trial the same preclusive effect that Illinois courts would accord it. 28 U.S.C. § 1738; *Wozniak v. County of DuPage,* 845 F.2d 677, 680 (7th Cir.1988). Illinois recognizes collateral estoppel when:

(1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issues was necessary to the court's judgments, and (4) those issues are identical to issues raised in the subsequent suit.

*Id.* at 682–83 (quoting *County of Cook v. MidCon Corp.,* 773 F.2d 892, 898 (7th Cir. 1985)). The party against whom estoppel is asserted must also have been provided with a full and fair opportunity to litigate the issue in the prior suit. *Crot v. Byrne,* 957 F.2d 394, 396 (7th Cir.1992) (quoting *Ray v. Indiana & Michigan Electric Co.,* 758 F.2d 1148, 1150 (7th Cir.1985)); *Charles Koen & Associates v. City of Cairo,* 909 F.2d 992, 1000 (7th Cir.1990).

None of the defendants were parties to the criminal case except Garza. To the extent plaintiff contends the City should be considered in privity with Garza for collateral estoppel purposes, such a claim is without merit. *See Koen,* 909 F.2d at 999 n. 7. Limited to the issue that Garza injured Czajkowski by scratching her chest, this issue was actually litigated and decided in the prior suit and was necessary to Garza's conviction.

Represented defendants argue that Garza did not have a full and fair opportunity to litigate in that he lacked the incentive to fully defend the action against him. Represented defendants claim he lacked incentive because the charges were only misdemeanor charges and Garza instructed his

---

5. Since no judgment is being entered at the present time, the time limits of Fed.R.Civ.P. 59(e) do not apply.

attorney not to fully cross examine Garza Jr. so as to avoid an additional impact on the son. Facing misdemeanor charges with a potential for imprisonment, as well as a likely impact on a police officer's employment if found guilty, is objectively adequate incentive to fully defend a case. Even assuming that the cross examination of Garza Jr. was not as full as it could have been, it is undisputed that Garza otherwise vigorously defended himself at his trial. Represented defendants do not point to any potential testimony of the son that may have affected the outcome of the trial. Instead, represented defendants contend that their medical expert could testify that Czajkowski's scratches were self-inflicted, yet Garza presented no such evidence at his trial. The evidence does not support that Garza was in any way precluded from presenting medical evidence based on a lack of incentive.

Based on his state court criminal trial, Garza is estopped from contesting that he injured Czajkowski by scratching her chest with his keys. The estoppel effect of the criminal trial does not apply to any of the other defendants.

### B. Garza's Police Board Hearing

Based on the findings of Garza's criminal trial and the transcript of those proceedings, OPS found as follows:

Sustained, Violation of Rule 8, "Disrespect to or maltreatment of any person, while on or off duty," in that on 21 June 1988, Officer Garza scratched Mary Garza across her chest with a set of keys; ....

Sustained, Violation of Rule 1, "Violation of any law or ordinance," in that on 04 January 1990, Officer Garza was found guilty of Battery by Judge Patrick Morse in Branch 46 of the Circuit Court of Cook County;

Sustained, Violation of Rule 2, "Any action or conduct which impedes the Department's efforts to achieve its policy and goals, or brings discredit upon the

Department," in that by Officer Garza's actions on 21 June 1988, while on duty, in uniform and in a marked police vehicle and his subsequent conviction of Battery on 04 January 1990, he brought discredit upon the Department.

The Superintendent of Police concurred in this finding and suspended Garza 30 days. This ruling was upheld by the Police Board and Garza served his suspension.

Relying on the principle of judicial estoppel, plaintiff contends that this action of the City estops it from denying that Garza scratched Czajkowski with keys. Plaintiff refers to judicial estoppel in her motion and provides the relevant facts in her Rule 12(m) statement. Plaintiff also refers to judicial estoppel in her opening brief, but makes no argument and provides no citation in support of this contention. Lacking a supporting argument, this contention of plaintiff could be ignored. *See Salazar v. City of Chicago,* 940 F.2d 233, 242–43 (7th Cir.1991); *In re ContiCommodity Services, Inc. Securities Litigation,* 733 F.Supp. 1555, 1571–72 (N.D.Ill.1990), *rev'd in part on other grounds,* 976 F.2d 1104 (7th Cir. 1992). The City, however, has made an argument as to why judicial estoppel should not apply and plaintiff provides a supporting argument in her reply. The City does not appear to have been prejudiced by plaintiff's failure to provide a supporting argument in her opening brief. Therefore, the issue will be addressed on its merits.[6]

▮ Judicial estoppel prevents a party who has successfully taken a position in one litigation from taking the opposite position in a subsequent litigation. *See Levinson v. United States,* 969 F.2d 260, 264–65 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d 1540, 1547–48 (7th Cir.1990). It is designed to protect the courts from "chameleonic litigants," not necessarily to protect the party invoking the doctrine, who is not required to show

---

6. Also, even if plaintiff had waived the judicial estoppel issue by failing to raise it in her opening brief, this court could raise it *sua sponte. In*

*re Cassidy,* 892 F.2d 637, 641 (7th Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990).

prejudice to invoke the doctrine. *Levinson*, 969 F.2d at 264; *In re Cassidy*, 892 F.2d 637, 641 & n. 2 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). Unlike collateral estoppel, which only applies against the party who had a fact decided adverse to it in the prior suit, judicial estoppel applies against the party that was successful in the prior suit. *Astor*, 910 F.2d at 1548. The Seventh Circuit has held that judicial estoppel is not part of the law of judgments in Illinois and therefore 28 U.S.C. § 1738 does not mandate that state law be applied when judicial estoppel is based on a prior state proceeding. *Id.* at 1550. *But compare Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1396–97 (7th Cir.1992) (applying Illinois judicial estoppel law apparently based on § 1738 and the prior litigation being in state court). The Seventh Circuit has left open the question of whether judicial estoppel is a substantive rule for which state law must be adopted in diversity actions. The present case involves a prior state court proceeding, but federal claims (and pendent state law claims). The federal rule will be applied.[7]

◼ The City argues that judicial estoppel is inapplicable based on the Police Board proceeding because judicial estoppel is limited to court proceedings. Under Illinois law, it is established that judicial estoppel can also be based on quasi-judicial administrative proceedings. *Department of Transportation v. Coe*, 112 Ill.App.3d 506, 68 Ill.Dec. 58, 60, 445 N.E.2d 506, 508 (4th Dist.1983); *Muellner v. Mars, Inc.*, 714 F.Supp. 351, 357–58 (N.D.Ill.1989). Since those courts were applying Illinois law, not federal law, they are not directly applicable to this case. Their rationale, however, is persuasive. They apply the doctrine to quasi-judicial administrative proceedings based on such an application being consistent with the "purposes of promoting truth and preventing parties from 'deliberately shifting positions to suit the exigencies of the moment,' *Coe* [68 Ill.Dec. at 60] 445 N.E.2d at 508, and with the

increasing importance of administrative proceedings in resolving disputes and adjudicating rights." *Muellner*, 714 F.Supp. at 358. It is held that, under federal law, judicial estoppel can be based upon quasi-judicial administrative proceedings. Such a holding is consistent with that of a number of other cases. *See Scott v. Land Span Motor Inc.*, 781 F.Supp. 1115, 1119 (D.S.C. 1991) (federal law—workers' compensation and employment discrimination proceedings before South Carolina Workers' Compensation Commission, South Carolina Human Affairs Commission, and Equal Employment Opportunity Commission); *Brown v. National R.R. Passenger Corp.*, 1990 WL 119558 *5–6 (N.D.Ill. Aug. 14, 1990) (federal law—disability determinations of Social Security Administration and Railroad Retirement Board); *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 731 F.Supp. 747, 750 (E.D.La. 1990) (federal law—tariff proceedings before Interstate Commerce Commission); *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442, 1447 n. 4 (S.D.N.Y.1986) (federal law—rate proceeding before New York State Public Service Commission); *Parisi v. Jenkins*, 236 Ill.App.3d 42, 52–53, 177 Ill.Dec. 496, 503, 603 N.E.2d 566, 573 (1st Dist.Ill.App. 1992) (Illinois law—workers' compensation proceeding); *People v. Wisbrock*, 223 Ill. App.3d 173, 165 Ill.Dec. 334, 336, 584 N.E.2d 513, 515 (3d Dist.1991), *appeal denied*, 144 Ill.2d 642, 169 Ill.Dec. 150, 591 N.E.2d 30 (1992) (Illinois law—Secretary of State revoking driver's license); *Smith v. Pinner*, 891 F.2d 784, 787 n. 4 (10th Cir. 1989) (Colorado law—workers' compensation hearing before Industrial Commission); *Muellner*, 714 F.Supp. at 357–58 (Illinois law—disability determinations of Social Security Administration); *Department of Transportation v. Grawe*, 113 Ill.App.3d 336, 69 Ill.Dec. 250, 255, 447 N.E.2d 467, 472 (4th Dist.1983) (Illinois law—workers' compensation proceeding before Industrial Commission); *Coe*, 68 Ill.Dec. at 60, 445

---

7. It may be that federal law and Illinois law as to judicial estoppel are essentially the same. *See Continental Casualty Co. v. Armstrong World* *Industries, Inc.*, 776 F.Supp. 1296, 1299–1300 (N.D.Ill.1991).

N.E.2d at 508 (same). Proceedings before the Police Board are truth finding proceedings with procedural protections and judicial review available. *See generally Parisi*, 236 Ill.App.3d at 47–48, 177 Ill.Dec. at 499–500, 603 N.E.2d at 569–570. Police Board proceedings are quasi-judicial administrative proceedings on which judicial estoppel can be based.

The question still remains as to whether judicial estoppel should be applied under the particular facts of this case. Clearly, the City's present position that Garza did not scratch Czajkowski is inconsistent with the position taken before the Police Board proceedings where Garza was suspended, in part, for scratching Czajkowski with keys.[8] It is also clear that the City pressed the position that Garza had scratched Czajkowski and that it was successful and acted on such a finding. Therefore, the basic requirements for applying judicial estoppel are present. *See Levinson*, 969 F.2d at 264–65. There, however, is no pat formula for applying judicial estoppel. *Id.* It is still an equitable matter of applying sound discretion. *Cassidy*, 892 F.2d at 642. "It should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake." *Id.* New information can be a basis for permitting a party to change its prior position. 18 C.A. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4477 at 782 (1981). *See, e.g., Eagle Foundation, Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir.1987).

The City argues that it is contrary to the public interest to apply judicial estoppel in this situation because the Police Department would then be deterred from disciplining its officers out of fear that findings of wrongdoing could be used against the City in civil lawsuits. The City, however, has other substantial incentives for disciplining its officers. Not only does it have an incentive to maintain the quality of its force, but failure to adequately discipline its officers also could increase its potential for liability, both because officers may then be committing more injurious conduct and because the City could potentially be found directly liable for encouraging wrongdoing of its officers. Policy does not call for declining to apply judicial estoppel to positions taken by the City in Police Board proceedings.

The City also argues that it should not be precluded from seeking to prove that the scratch injuries were self-inflicted. It claims to have a medical expert who will testify to that effect; evidence that was not available at the time of the Police Board hearing. However, in its Rule 12(n) statement, the City relies only on Garza's testimony at the criminal trial in contending that there is a dispute as to how Czajkowski was scratched. Defendants' Rule 12(n) Statement ¶¶ 22, 24. That testimony was available to the City at the time of the Police Board proceedings and therefore would not be a basis for inapplicability of judicial estoppel. Elsewhere in their Rule 12(n) Statement, defendants refer to the purportedly new medical evidence. Defendants provide an affidavit of a doctor with board certification in general surgery who specializes in trauma surgery. Based on photographs of Czajkowski's injuries, he states that he could testify to a reasonable degree of medical certainty as follows:

a) Based on my review of the attached pictures, the location, position, depth and symmetry of the marks over the left breast are compatible with injury caused by human fingernails.

b) Based on my review of the physical characteristics of the injuries evident in the attached pictures, it is possible these scratch marks were self-inflicted.

The City does not contend that the evidence upon which the medical opinion is based was unavailable to it at the time of the Police Board proceedings. The City also had the transcript of the criminal trial

---

8. Although the Police Board is within the Police Department, it performs independent review of certain police suspensions at the instigation of the Superintendent of Police. *See D'Acquisto v. Washington*, 640 F.Supp. 594, 621–22 (N.D.Ill. 1986); *D'Acquisto v. Washington*, 750 F.Supp. 342 (N.D.Ill.1990). For purposes of judicial estoppel, it is the position pressed by the Superintendent that reflects the position of the City.

in which the trial judge specifically mentioned that he was not presented with any evidence that the injuries were self-inflicted. Thus, the possible relevance of any such evidence had been brought to the attention of City investigators. The City also had before it Garza's denial that he had scratched Czajkowski. At the time of the Police Board hearing, the City apparently had the same information before it that caused it to consult a medical expert in the present proceedings. That the City waited until now to obtain the advice of a medical expert is not a sufficient basis for declining to apply judicial estoppel. Having previously taken a contrary position, the City will be estopped from contesting that Garza scratched Czajkowski during the June 1988 incident.

## IV. GARZA'S LIABILITY

Czajkowski contends that the uncontested facts support that Garza is liable on the Count I excessive force claim and the Count IV battery claim. Since Garza is estopped from denying that he injured Czajkowski by scratching her, Czajkowski is entitled to a partial summary judgment for liability on the battery claim against Garza.[9] As for the excessive force claim, estoppel again precludes Garza from denying that he scratched Czajkowski. Since there is no evidence to support that Czajkowski did anything to provoke the scratching, the use of such force must be found to be excessive. The City argues, however, that the evidence does not support that Garza was acting under color of law, which is a necessary element of a constitutional excessive force claim. *Gibson v. City of Chicago,* 910 F.2d 1510, 1524 (7th Cir.1990).

It is uncontested that Garza was on duty and in uniform in a marked squad car when he stopped Czajkowski's car. The City argues, however, that Garza stopped Czajkowski to retrieve keys that she had and that this was personal conduct unrelated to the performance of his police duties.

It is uncontested that Garza and Hrebanek were on duty on their way to meet with an informant when they came upon Czajkowski and Garza Jr. traveling in a car. It is also uncontested that Garza pulled alongside Czajkowski and signalled her to pull over. After she pulled over to the curb, Garza parked his car in front of Czajkowski's. There is a factual dispute as to whether or not Garza activated his blue flashing mars lights and the siren. Garza testified that Czajkowski gave him "the finger" and that she crossed the yellow line. He testified that he pulled her over because of this "obscene" gesture and because he wanted to get keys from her. It can also be inferred that he pulled her over because of the alleged traffic violation of crossing the yellow line. There is inconsistent testimony as to whether Garza pulled Czajkowski over to get his keys and because angry over the insult of the obscene gesture, or also in part because he believed Czajkowski had committed a traffic offense and an obscene gesture crime. Czajkowski also testified that Garza expressly threatened to arrest her during one point of their altercation.

On plaintiff's motion, the disputes are resolved in favor of defendants. On plaintiff's motion, it must be assumed that Garza stopped Czajkowski because of the personal motive of seeking to get his keys from her and with no motivation to arrest her. It must also be assumed that he did not use the mars lights or siren, that he never expressly threatened to arrest her, and that his conduct was not such that a person would have believed she was being threatened with arrest. It could be found that Garza was not acting under color of law in that he was acting only on personal motives and not using the authority of his office to stop Czajkowski. *See Delcambre v. Delcambre,* 635 F.2d 407, 408 (5th Cir. 1981); *Simmons v. City of Evanston,* 1992 WL 25712 *6-8 (N.D.Ill. Jan. 31, 1992); *Manning v. Jones,* 696 F.Supp. 1231, 1234–35 (S.D.Ind.1988). *See generally Gibson,* 910 F.2d at 1516–17 & n. 10. Since the facts could support that Garza was not

---

**9.** To the extent, however, that Czajkowski wants to base battery liability on choking as well, she still must proceed further on the question of liability for choking.

acting under color of law, Czajkowski is not entitled to summary judgment on her Count I § 1983 excessive force claim against Garza.

On the other hand, on defendants' motion, disputes must be resolved in plaintiffs' favor. Therefore, it must be assumed that Garza used the siren and mars lights and that he stopped plaintiffs, at least in part, because of the traffic offense and obscene gesture. It also must be assumed that Garza threatened to arrest Czajkowski and that Czajkowski was reasonably influenced by the fact that Garza was an on-duty police officer, not merely by the fact of their personal relationship and Garza's past use of force against her. On defendants' motion, it must be assumed that Garza was acting under color of law. Therefore, the City is not entitled to summary judgment on the federal claims against it based on the ground that Garza did not commit any wrongdoing under color of law.

## V. HREBANEK'S LIABILITY

■ Czajkowski moves for summary judgment against Hrebanek on the Count I excessive force claim, alleging that he is responsible for aiding and abetting the excessive force or for standing by while his fellow officer assaulted Czajkowski. As previously held, there is no basis for estopping Hrebanek from denying that Garza scratched Czajkowski's chest. Hrebanek presents evidence creating a factual dispute as to whether or not Garza physically harmed Czajkowski. Therefore, Czajkowski is not entitled to summary judgment against Hrebanek.

Hrebanek has moved for summary judgment on the two claims against him. It had been clearly established, well before the June 1988 incident, that a police officer can be held liable for standing by while his fellow officer assaults a citizen. *Byrd v. Brishke,* 466 F.2d 6 (7th Cir.1972); *Rascon v. Hardiman,* 803 F.2d 269, 276 (7th Cir. 1986). Plaintiff presents evidence sufficient to support that Hrebanek knew or should have known that Garza was assaulting plaintiffs and acted deliberately indif-ferent in either turning away or failing to attempt to stop Garza. The Count I federal claim against Hrebanek will not be dismissed.

■ Hrebanek argues that the Count IV state law claims should be dismissed because there is no evidence that he directly participated in injuring plaintiffs. Plaintiffs do not argue that Hrebanek can be held liable under state law simply for standing by while his fellow officer assaulted plaintiffs. They argue that Hrebanek can be considered to have aided and abetted Garza's conduct or to have conspired with him. Plaintiffs point to Hrebanek's allegedly false testimony in Garza's favor at Garza's criminal trial and in the OPS investigation. They also point to his turning his back to the assault and Garza's statement to Hrebanek after the attack, "See, Herbie, I told you she was crazy." A person's intentional participation in aiding and abetting the unlawful conduct of a companion can be inferred from the person aiding the companion in covering up the conduct. *See People v. Cole,* 50 Ill.App.3d 133, 7 Ill.Dec. 848, 856, 365 N.E.2d 133, 141 (5th Dist.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978); *People v. Watts,* 170 Ill.App.3d 815, 121 Ill. Dec. 427, 434, 525 N.E.2d 233, 240 (4th Dist.1988); *People v. Ray,* 80 Ill.App.3d 151, 35 Ill.Dec. 688, 692, 399 N.E.2d 977, 981 (5th Dist.1979). Plaintiffs have submitted sufficient evidence for a jury to find that Hrebanek aided and abetted Garza. The Count IV claim against Hrebanek will not be dismissed.

## VI. CITY'S LIABILITY

### A. Federal Claims—Custom or Policy

■ The City has moved to dismiss the federal claims against it on the ground that plaintiffs cannot show a custom or policy of deliberately indifferent conduct that caused injury to plaintiffs. In Count II, plaintiffs allege a custom or policy of condoning or failing to discipline police officers who commit domestic violence. Count III alleges the existence of a code of silence that con-

doned or otherwise caused the injuries to plaintiffs.

The City can only be liable on the federal claims if the injuries to plaintiffs were the result of a municipal policy or custom.

An express City policy need not be [shown] in order for plaintiffs to state a claim which is consistent with *Monell [v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)]. In certain circumstances, a pattern of conduct by non-policy-making municipal employees may rise to the level of a city policy, custom or usage which is sufficient to give rise to municipal liability.

To hold a city liable in such circumstances, the plaintiff must first show a pattern of conduct. A single incident of unconstitutional behavior by a municipal employee is insufficient to hold the city liable. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). Where the pattern of conduct is sufficiently widespread in terms of duration and/or frequency, it may give rise to an inference of actual or constructive knowledge on the part of the city. *See Spell [v. McDaniel,]* 824 F.2d [1380,] 1387 [ ( (4th Cir.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) ]; *Williams v. City of Chicago*, 658 F.Supp. 147, 152 (N.D.Ill.1987). When the city possessing such knowledge, fails to act to curb the conduct, the pattern of conduct may be considered a policy or custom attributable to the city if the city's failure to act rises to the level of deliberate indifference to the rights of those who are affected. *See Canton v. Harris*, 489 U.S. 378 [109 S.Ct. 1197, 103 L.Ed.2d 412] (1989); *Spell*, 824 F.2d at 1391; *Williams*, 658 F.Supp. at 154. Finally, the plaintiff must prove that his injury was caused by the particular policy or custom shown. *See Spell*, 824 F.2d at 1390–91.

*McLin v. City of Chicago*, 742 F.Supp. 994, 997–98 (N.D.Ill.1990). *See also Tapia v.*

*City of Greenwood*, 965 F.2d 336, 338–39 (7th Cir.1992).

Regardless of the City's written policies, if customary practice is to the contrary, the City "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." [10] *Smith v. City of Joliet*, 965 F.2d 235, 237 (7th Cir.1992) (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036). *See also Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir.), *cert. denied*, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990) (quoting *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986)) (customs are persistent and widespread practices of officials; the "word 'custom' generally implies a habitual practice or a course of action that characteristically is repeated under like circumstances"). A custom of failing to discipline police officers can be shown to be deliberately indifferent if the need for further discipline is so obvious and disciplinary procedures so inadequate as to be likely to result in the violation of constitutional rights such that a jury could attribute to the policymakers a deliberate indifference to the need to discipline the police force. *See Tapia*, 965 F.2d at 338 (quoting *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir.1989)). Generally, it must be shown that the municipality was aware of actual deprivations or aware of such a strong likelihood of deprivations that any reasonable person would have taken preventive measures. *Sims*, 902 F.2d at 543.

On the motions for summary judgment on the ground of lack of a custom or policy, factual disputes must be resolved in favor of plaintiffs. For the time period leading up to the June 1988 incident, plaintiffs have presented evidence from which it could be found that the Department's disciplinary procedures, as implemented through OPS, had been woefully inadequate and had sustained only a fraction of meritorious cases

---

**10.** The City's reliance on *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir.1992), is misplaced. That case involved conduct by a non-policymaker that was not merely inconsistent with written policies, but also inconsistent with the City's general practices. *Auriemma* did not involve systemic practices (customs) that were inconsistent with written policy.

of excessive force and domestic violence. That such improper conduct was unlikely to result in disciplinary conduct was known throughout the Department, including by the Department Superintendent and the Director of OPS. It was also known in the Department that there was a serious problem of domestic violence against wives of police officers. Plaintiffs present sufficient evidence from which a jury could find that police officers would have understood that excessive force and domestic violence would not necessarily be punished. Plaintiffs also present sufficient evidence from which it could be found that a code of silence existed within the Department.

Plaintiffs have presented sufficient evidence of a Department-wide policy and incidents of excessive force and domestic violence such that it could also be found that there was deliberate indifference to the fact that failure to discipline officers for such conduct did or could result in additional such incidents. There is a sufficient basis for a jury to find that the City was deliberately indifferent or that it tacitly authorized or condoned the conduct that was occurring. As for a causal link, the jury could find that Garza would have known that he was unlikely to be punished and that he therefore was more free to commit the conduct alleged by plaintiffs. It could also be found that these customs contributed to Hrebanek's failure to intervene during the June 1988 incident. Additionally, Czajkowski reported Garza's prior abusive conduct to various members of the Department prior to the June 1988 incident. It could be found that the failure to take further action in response to these reports was the result of the custom of not disciplining officers who commit domestic violence and that failure of the Department to take further action in response to Czajkowski's complaints contributed to plaintiffs' injuries.

Whether the customary practices alleged actually existed, whether the continued ex-

istence of any such practices constituted deliberate indifference, and whether there is a causal link between any such practices and plaintiffs' injuries are disputed factual issues that must be left to be resolved by the jury. The City is not entitled to summary judgment on Counts II and III.

### B. State Law Claims–Scope of Employment

▉ The City contends that it cannot be liable on the Count V respondeat superior claims because Garza's conduct occurred outside the scope of his employment.[11] Czajkowski argues that the uncontested facts show that Garza's conduct was within the scope of his employment.

As previously discussed in regard to the color of law issue, *see* § IV *supra*, on the City's motion the resolution of factual disputes requires a finding that Garza was stopping Czajkowski, at least in part, because of an alleged traffic offense and obscene gesture offense. The City concedes that committing battery under such circumstances would be considered to be within the scope of employment. *See Argento v. Village of Melrose Park*, 838 F.2d 1483, 1495 (7th Cir.1988); *Gregor v. Kleiser*, 111 Ill.App.3d 333, 67 Ill.Dec. 38, 42, 443 N.E.2d 1162, 1166 (2d Dist.1982).

On the other hand, on Czajkowski's motion it must be assumed that Garza was solely on a personal excursion to obtain his keys from Czajkowski. *See* § IV *supra*. Under that factual assumption, Garza's conduct would be outside the scope of his employment. *See Gregor, supra.*

Neither party is entitled to summary judgment on Count V.

### VII. MARTIN'S AND FOGEL'S LIABILITY

▉ Superintendent of Police Martin and OPS Director Fogel are sued in their individual capacities. In Counts II and III,

---

**11.** As previously discussed, the City is estopped from denying that Garza committed battery by scratching Czajkowski's chest. *See* § III(B) *supra.* It has also been held that summary judgment dismissing the state law claims against Hrebanek cannot be granted. *See* § V *supra.* The City makes no argument that Hrebanek's conduct was outside the scope of his employment.

plaintiffs claim that Martin and Fogel are responsible for the practice of failing to discipline police officers. Martin and Fogel move for summary judgment on the ground that there is no evidence supporting their personal involvement in any wrongdoing.

As discussed in § VI(A) *supra*, there is evidence to support the existence of Department practices of failing to discipline and a code of silence, as well as Superintendent Martin's and Director Fogel's knowledge of those practices. There is sufficient evidence from which Martin and Fogel's personal responsibility and deliberate indifference can be inferred. Also, these defendants are not entitled to qualified immunity. It was clearly established prior to 1988 that liability for individual officer's acts of excessive force could be based on a custom or practice of failing to discipline. *See Williams v. City of Chicago,* 658 F.Supp. 147 (N.D.Ill.1987). It was also clearly established that responsible supervisors could be individually liable for deliberate indifference to systemic deficiencies. *See Rascon v. Hardiman,* 803 F.2d 269, 273–74 (7th Cir.1986); *Wellman v. Faulkner,* 715 F.2d 269, 272 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984); *Haynesworth v. Miller,* 820 F.2d 1245, 1259–61 & n. 110 (D.C.Cir.1987); *Wilson v. City of Chicago,* 684 F.Supp. 982, 985–86 (N.D.Ill.1988). The claims against Martin and Fogel will not be dismissed.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motion for summary judgment [Doc. # 90–1] is granted in part and denied in part. Defendants' motion for summary judgment [Doc. # 95–1] is granted in part and denied in part.

(2) Summary judgment on liability is granted in favor of Czajkowski on her Count IV claim against Garza that he committed battery by scratching her on the chest. The City is estopped from denying that Garza scratched Czajkowski on her chest.

(3) The official capacity claims against defendants Fogel and Martin are dismissed without prejudice. All claims against defendant Shines are dismissed.

(4) *Pro se* defendant Garza is advised herein as to how to respond to a summary judgment motion. Defendant Garza is granted leave to move, within 28 days, for reconsideration of today's ruling.

(5) Parties shall file an original and copy of their topbound final pretrial order in full compliance with Local Rule 5.00 in open court on January 12, 1993 at 9:15 a.m.

## APPENDIX

Because plaintiff Mary Czajkowski has moved for summary judgment against *pro se* defendant Ruben Garza, the court, as required by *Timms v. Frank,* 953 F.2d 281, 285–86 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992); *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), directs defendant's attention to the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Under Rule 56(e), a defendant may not rely on the mere allegations of his answer or other pleadings to oppose a motion for summary judgment. Instead, he must respond to the motion with sworn affidavits or other evidentiary material to support any factual basis he may have for opposing the motion. If defendant fails to so respond, then the facts declared in the sworn affidavits or other evidentiary material submitted in support of the motion for summary judgment will be deemed to be true and, if applicable law allows, judgment shall be granted in favor of the moving plaintiff.

In addition, defendant must file a statement as required by Local Rule 12(n) of this Court. The statement is essentially a response to the Rule 12(m) statement in plaintiff's motion. Defendant's statement should respond to each numbered paragraph in plaintiff's statement, agreeing or denying the facts as set out. If defendant disagrees with any facts set forth in plaintiff's statement, he should specifically so state and indicate what evidence in the record supports his version of the facts. If defendant does not dispute the facts stated by plaintiff, the court will accept plaintiff's facts as true. Defendant's statement should also include numbered paragraphs

setting out any additional disputed, material facts that defendant believes will require litigation to determine.

## FEDERAL RULE OF CIVIL PROCEDURE 56

### Rule 56. Summary Judgment

**(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

**(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**(g) Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other

party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987.)

LOCAL RULES 12(m) and 12(n)

**m. Motions for Summary Judgment; Moving Party.** With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law including a description of the parties and all facts supporting venue and jurisdiction in this Court. That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

**n. Motions for Summary Judgment; Opposing Party.** Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (2) a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

ON MOTION FOR RECONSIDERATION

Defendants City of Chicago (the "City"), Leroy Martin, and David Fogel move for reconsideration of certain aspects of this court's December 3, 1992 ruling ("December Ruling") on cross motions for summary judgment. Familiarity with the December Ruling is assumed.

The City seeks reconsideration of the holding that, as a result of the position it took in Ruben Garza's Police Board proceeding, it is judicially estopped from denying that Ruben Garza scratched plaintiff Mary Czajkowski's chest. *See* December Ruling § III(B). In moving for reconsideration, the City presses in greater detail its argument that policy reasons go against applying judicial estoppel to positions taken by the City when seeking to discipline police officers before the Police Board.

The City again argues that permitting the application of judicial estoppel in this situation is a disincentive for the City to seek to discipline police officers. It adds little weight to that argument to point out that a policy against discouraging remedial actions (in this case disciplinary actions) also is contained in Fed.R.Evid. 407. The December Ruling did not ignore that the City has an interest in disciplining its officers and that it should not be unduly discouraged from pursuing that interest. It was held, however, that the City still has sufficient other incentives for seeking to discipline police officers such that application of judicial estoppel principles to Police Board proceedings should not result in the City being disinclined to pursue disciplinary actions.[1] December Ruling at 1436. The

---

1. It is also noted that the finding of a disciplinary violation does not automatically make the City liable, even in an excessive force case. The City only has federal liability if the officer's actions were state action pursuant to a custom or policy. *See* December Ruling § VI(A). There is state law liability only if the officer's actions were within the scope of employment, *see id.* § VI(B), and not immunized by the Local Governmental and Governmental Employees

City now makes additional arguments as well.

The City contends that a necessary element of judicial estoppel is that the party against whom estoppel is applied have received a benefit from the position taken in the prior proceeding. Illinois law is cited for this proposition. *See, e.g., Department of Transportation v. Grawe*, 113 Ill.App.3d 336, 69 Ill.Dec. 250, 254, 447 N.E.2d 467, 471 (4th Dist.1983) (one of five elements for applying judicial estoppel is that "the party taking the positions must have been successful in maintaining the first position and must have received some benefit thereby in the first proceeding"). As previously held, however, federal law of judicial estoppel applies to this case. December Ruling at 1435.

■■■ The Seventh Circuit has held that the doctrine of judicial estoppel is not "reducible to a pat formula," but does have "certain boundaries." *Levinson v. United States*, 969 F.2d 260, 265 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992). Those "boundaries" do not include a requirement that the party receive benefits from prevailing in the prior litigation; it is only necessary that the party prevail on the position in the litigation itself.[2] *See id.; Allison v. Bayfield Electric Cooperative*, 979 F.2d 1187, 1193 (7th Cir.1992); *Witham v. Whiting Corp.*, 975 F.2d 1342, 1344 (7th Cir.1992); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1547 (7th Cir.1990); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). *See also Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 358 (Fed.Cir.1992) (litigation benefits). It is not

even necessary that the party prevail in the litigation as a whole, only that it prevail on the issue for which preclusion is sought. *Cassidy*, 892 F.2d at 641. The City prevailed on the scratched chest issue in the Police Board proceeding so the requirement of prevailing on the issue in the prior proceeding is satisfied. Contrary to the City's contention, there is no requirement that it also benefit monetarily.[3]

The City argues that the court should be reluctant to apply judicial estoppel against a government body. It is certainly true that courts should be especially reluctant to apply *equitable* estoppel based on statements or conduct of government employees. *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Government bodies, however, are not necessarily treated differently when applying collateral estoppel to preclude the government body from disputing *fact* determinations made against the government body in prior litigation.[4] *See Adkins v. Commissioner*, 875 F.2d 137, 141 (7th Cir.1989). *Cf. United States v. Bailin*, 977 F.2d 270 (7th Cir.1992) (applying direct estoppel based on partial verdict in criminal case). *See, e.g., Levinson*, 969 F.2d at 264 (applying standard collateral estoppel factors when collateral estoppel is invoked against the government). In two Seventh Circuit cases involving the invocation of judicial estoppel against the federal government, the Seventh Circuit gave no indication that a different standard applies when a government body is involved. *See Levinson*, 969 F.2d at 264–65; *Eagle Foundation, Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir.1987). In both of those cases,

Tort Immunity Act, Ill.Rev.Stat. ch. 85, ¶ 1–101 *et seq.* (1992).

2. It is undisputed that the other two requirements identified in *Levinson* are satisfied. The City has taken clearly inconsistent positions in two proceedings and the facts at issue are the same in both proceedings.

3. Even if an outside benefit were required, the City benefited from having its rules enforced and having Garza be disciplined with a suspension.

4. Defendant cites *Adams v. Sotirakis*, 1991 WL 140914 (N.D.Ill. July 22, 1991). In that case, the court declined to apply collateral estoppel against the plaintiff who had been a complaining witness in disciplinary proceedings before a police board. The court held that the plaintiff could not be bound by the disciplinary proceeding because a complaining witness is not a party to that proceeding. *Adams* does not address the question of applying estoppel against a municipality based on police disciplinary proceedings.

however, other grounds existed for denying the application of judicial estoppel.[5] Other jurisdictions, though, have applied judicial estoppel against government bodies. *See, e.g., Northern Alaska Environmental Center v. Lujan,* 961 F.2d 886, 891 (9th Cir.1992); *Russell v. Rolfs,* 893 F.2d 1033, 1038 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991); *Reynolds v. Commissioner,* 861 F.2d 469, 474 (6th Cir.1988); *People v. Wisbrock,* 223 Ill.App.3d 173, 165 Ill.Dec. 334, 336, 584 N.E.2d 513, 515 (3d Dist.1991), *appeal denied,* 144 Ill.2d 642, 169 Ill.Dec. 150, 591 N.E.2d 30 (1992).

■ Judicial estoppel is a flexible standard not reducible to a pat formula. *See Levinson,* 969 F.2d at 264; *Cassidy,* 892 F.2d at 642; 18 C.A. Wright, A. Miller, & E. Cooper *Federal Practice & Procedure* § 4477 at 779 (1981). Judicial estoppel is closer to collateral estoppel than equitable estoppel, but is still different from both equitable estoppel and collateral estoppel. *See* 18 Wright, Miller, & Cooper, § 4477 at 779–80, 787. The flexible standard for judicial estoppel permits the consideration of all the circumstances involved, which would include that a party is a governmental body and the particular circumstances of being such a party. *See Cassidy,* 892 F.2d at 642 (judicial estoppel not applied if it works an injustice); *Maddox v. Bradley,* 345 F.Supp. 1255, 1258 (N.D.Tex.1972) (judicial estoppel can apply against government as long as not against public policy and not based on a government employee acting beyond his or

her authority); 18 Wright, Miller, & Cooper, § 4477 at 779 ("The concern is to avoid unfair results and unseemliness. This concern is informed by all the traditional common law views of fair dealing that might be expected."). The December Ruling took into consideration that the prior proceeding was a disciplinary proceeding of a governmental entity, but did not find sufficient policy grounds to forego applying judicial estoppel.

■ The City argues that judicial estoppel against a municipality should be limited to situations involving affirmative misconduct. The City relies on *City of Alma v. United States,* 744 F.Supp. 1546, 1555–56 (S.D.Ga.1990).[6] That case adopts for judicial estoppel the affirmative misconduct standard that applies to equitable estoppel claims (or defenses) against the federal government.[7] As previously indicated, however, judicial estoppel is closer to collateral estoppel than equitable estoppel and collateral estoppel does not require a showing of any misconduct. This court will not apply the equitable estoppel affirmative misconduct standard to judicial estoppel claims against a governmental body. *See Reynolds,* 861 F.2d at 474.

The City contends that applying judicial estoppel will make it both the accuser and the defender of a police officer. "Garza was responsible for his own defense at his criminal trial. He was likewise responsible for his defense before the Police Board. The Police Department was not responsible

**5.** The City cites *United States v. Siegel,* 472 F.Supp. 440, 442 n. 4 (N.D.Ill.1979). In that case, the court declined to judicially estop the government in a criminal case because the statements in a prior proceeding were expressions of opinions or legal conclusions. Czajkowski, however, seeks to apply judicial estoppel in a civil proceeding and only as to a factual issue, not a legal issue. Also, the holding of *Siegel* has been rejected by the Seventh Circuit, at least as applied to private parties. *See Cassidy,* 892 F.2d at 641–42.

**6.** The City's reliance on *Levinson,* 969 F.2d at 265, is misplaced. *Levinson* is referring to estoppel based on factual findings of misconduct in the prior proceeding; it is not referring to any additional requirement of affirmative misconduct in the conduct of litigation. *See Tele-*

*dyne Industries, Inc. v. NLRB,* 911 F.2d 1214, 1218–19 (6th Cir.1990), *cited in Levinson,* 969 F.2d at 265.

**7.** In *State of Michigan v. City of Allen Park,* 954 F.2d 1201, 1217 (6th Cir.1992), which is not cited by the City, the court indicated an affirmative misconduct standard applied to judicial estoppel. The discussion in that case, however, concerned a claim for a grant of public funds. Under such circumstances, a stricter standard applies. *See id.* (citing *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)). The present case does not involve a grant of public funds. In a case not involving a grant of public funds, the Sixth Circuit has held that the affirmative misconduct standard does not apply to judicial estoppel. *Reynolds,* 861 F.2d at 474.

for developing Garza's defenses to disciplinary charges. By applying judicial estoppel to the City for positions taken in a disciplinary action against police officers, this Court is requiring the Department act as both accuser and advocate on behalf of an officer it seeks to discipline." City's Brief in Support of Reconsideration at 4. This argument is specious for two reasons. First, it is true of most applications of judicial estoppel that the party is now taking the position of its opponent in the prior litigation; otherwise the requirement of having taken contradictory positions would not be satisfied.[8] If the argument presently made by the City is held to be valid, it would virtually never be appropriate to apply judicial estoppel. Second, the City's dual roles exist independent of any application of judicial estoppel. The City was an accuser of Garza in the disciplinary proceedings. As a result of plaintiffs' filing of the present lawsuit, not as the result of the invocation of judicial estoppel, the City is put in the position of defending the actions of Garza that plaintiffs allege the City is responsible for.

Last, in a footnote the City points to the undisputed facts that the hearing before the Police Board was based on a paper record presented to the Board by a hearing officer following an investigation and that the Board did not exercise its discretion to order an evidentiary hearing. The City only contends that the "purported judicial proceeding" that occurred before the Police Board "is not analogous to other judicial estoppel cases." This argument is not developed and the City does not expressly contend that the Police Board proceeding does not qualify as a quasi-judicial administrative proceeding.

The Seventh Circuit has held that an "an agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examination and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Reed v. Amax Coal Co.*, 971 F.2d 1295, 1300 (7th Cir.1992).[9] The rules of the Chicago Police Board provide for all those procedures when an officer is suspended for more than 30 days in one year or discharged. Police Board Rules of Procedure, §§ I–III. When an officer is suspended for 6 to 30 days, a hearing officer initially considers the written submissions of the officer and the Superintendent. *Id.* § IV. That includes examination of the OPS investigative file. *See id.* §§ IV(B)(4)–(5). In Garza's case, the paper record included statements of Hrebenak, Garza Jr., and Garza's supervisor, and the criminal court record, as well as Garza's request for review and the Superintendent's response. *See id.* § IV(B)(3). The Police Board has the discretion to grant a full hearing if it determines that the written presentations warrant such a hearing.[10] *Id.* § IV(B)(6). Also, Police Board procedures on 30–day suspensions must comport with the requirements of due process. *Golbeck v. City of Chicago*, 782 F.Supp. 381, 384–86 (N.D.Ill. 1992); *Kropel v. Conlisk*, 60 Ill.2d 17, 322 N.E.2d 793 (1975).

The City does not dispute that due process protections were provided and that both Garza and the Superintendent were permitted to present their views to the Board. The Police Board was provided with statements of Garza and Hrebenak supporting that Garza did not scratch Czajkowski and a statement from Garza Jr. that he did. Also, the transcripts of Garza's criminal trial were included in the Police Board record.

---

**8.** The only exception might be if the position taken in the prior proceeding was a stipulation or settlement with the opponent in the prior proceeding.

**9.** It is not necessarily true that all these safeguards need to be available for an agency to be considered to be acting in a judicial capacity. *See, e.g., EZ Loader Boat Trailers, Inc. v. Cox*

*Trailers, Inc.*, 746 F.2d 375, 377–78 (7th Cir. 1984).

**10.** The summary judgment record contains procedural rules apparently promulgated in 1973. A recent case indicates there may also be procedures for the officer to request a hearing before a "complaint review panel." *See Golbeck v. City of Chicago*, 782 F.Supp. 381, 383 (N.D.Ill.1992).

■ There is no requirement that judicial estoppel be limited to proceedings where live evidentiary hearings are held. *Cf. EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 378 (7th Cir. 1984) (collateral estoppel based on Trademark Board determination without the benefit of live testimony). Many court proceedings are resolved on the papers on motions to dismiss, motions for summary judgment, or other motions. Stipulations or settlements can also provide a basis for applying judicial estoppel. *Cf. Reynolds*, 861 F.2d at 473–74. Most administrative proceedings, while providing due process protections, do not follow the same procedures as do courts. Nevertheless, judicial estoppel can be based on administrative proceedings, *see* December Ruling at 1435–1436, including tariff proceedings resolved on a paper record, *see Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 731 F.Supp. 747, 750 (E.D.La. 1990), and disability benefit proceedings that are nonadversarial administrative proceedings, *see Brown v. National R.R. Passenger Corp.*, 1990 WL 119558 *5–6 (N.D.Ill. Aug. 14, 1990); *Muellner v. Mars, Inc.*, 714 F.Supp. 351, 357–58 (N.D.Ill.1989). Also, it is only necessary that the opportunity for full litigation be available; it is not required that a party exercise that opportunity. *Cf. Reed*, 971 F.2d at 1300 (collateral estoppel); *Buckhalter v. Pepsi–Cola General Bottlers, Inc.*, 820 F.2d 892, 896–97 (7th Cir.1987) (same). Garza had the opportunity to request an evidentiary hearing and to appeal to the Illinois Circuit Court. The procedures available before the Police Board and employed in this case did not prevent Garza or the Board from having a fair opportunity to present their views. The Police Board determination in this case was based on the presentation of both sides' positions, statements of three witnesses to the incident, and the transcript of a criminal proceeding at which Garza, his victim, and others testified and were cross-examined. The Police Board proceedings were a quasi-judicial administrative proceeding upon which judicial estoppel can be based. *See* December Ruling at 1435–1436.

■ In applying judicial estoppel, the focus is primarily on the party's pursuit of an issue and secondarily on the court's or administrative body's resolution of that issue. Here, the City (through OPS) found that Garza scratched Czajkowski, the Superintendent upheld that finding, and the City defended that position before the Police Board. Garza opposed the City's position at all three of those steps. The City, however, prevailed before the Police Board. It is clearly inconsistent for the City to contend before the Police Board that Garza scratched Czajkowski, while contending here that Garza did not scratch her. Additionally, before the Police Board, the City contended that the findings of the criminal court should be treated as conclusive and that Garza's attempt to reevaluate the evidence should be ignored, yet here it argues that it should be able to go over the evidence again.

The issue on which Czajkowski seeks to apply judicial estoppel is a narrow and discrete factual issue. The prior proceeding and present proceeding both involve the same incident and many of the same issues as to Garza's conduct during that incident. No sufficient public policy grounds have been found for declining to apply judicial estoppel to this discrete factual issue. The City's motion for reconsideration will be denied.

■ Martin and Fogel also seek reconsideration. They label their argument as one involving qualified immunity. Nothing is presented to change the previous conclusion that the law supporting the claims against Martin and Fogel was clearly established as of June 1988. December Ruling at 1441. The primary focus of Martin's and Fogel's argument is that there are insufficient facts to support their liability. This is not a qualified immunity argument. *See Gorman v. Robinson*, 977 F.2d 350, 354–55 (7th Cir.1992). The factual arguments made on reconsideration were previously presented and considered. *See* December Ruling at 1440–1441. Plaintiffs have presented sufficient evidence to preclude the granting of summary judgment.

Martin's and Fogel's motion for reconsideration will be denied.

IT IS THEREFORE ORDERED that the motion of defendants City of Chicago, Martin, and Fogel to reconsider summary judgment ruling [118–1] is denied. Ruling date of January 19, 1993 is stricken. Parties shall submit final pretrial order in open court on January 26, 1993 at 9:15 a.m.